STATE OF NEBRASKA EX REL. NEBRASKA STATE BAR ASSOCIATION, RELATOR, V. REX TAY JOHNSON, RESPONDENT.

544 N.W.2d 803

Filed March 8, 1996.   No. S-94-1164.

John W. Steele, Assistant Counsel for Discipline, for relator.

No appearance for respondent.

CAPORALE, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

PER CURIAM.

On October 11, 1994, the Colorado Supreme Court suspended Rex Tay Johnson (Respondent) from practicing law in that state for 3 years. The Counsel for Discipline for the Nebraska State Bar Association (NSBA) then filed a motion for reciprocal discipline on December 12, 1994, based upon the acts of Respondent that led to that Colorado suspension.

Respondent was admitted to the practice of law in the State of Nebraska on June 22, 1970, and to the Colorado bar on October 12, 1973. The Colorado Supreme Court found that Respondent's conduct with respect to seven clients and the

disciplinary board violated a variety of disciplinary rules. The Colorado Supreme Court also found that Respondent was uncooperative during the investigation of the grievances against him. Respondent stated that he has a stuttering problem, which caused breakdowns in communication and subsequently caused the grievances to be filed. On October 11, 1994, the Colorado Supreme Court suspended Respondent for a period of 3 years.

## BACKGROUND

In the Colorado proceedings, the parties stipulated to the following facts and conclusion:

### A

In October 1987, Ella M. Ray retained the respondent to file a Chapter 7 bankruptcy proceeding. Ray initially paid the respondent $350 and later an additional $125 for costs. In connection with work performed by the respondent prior to the sale of Ray's home, the respondent prepared a promissory note and deed of trust to himself in the amount of $3,310, plus interest at the rate of 8% per annum for work already completed and for "anticipated" legal expenses. The respondent eventually received $3,359.55 from the proceeds of the sale of Ray's home.

The respondent has stipulated that he charged an excessive fee in the Ray matter, that he failed to account for the application of the funds he received from the deed of trust after being requested to do so, and that he misrepresented to the bankruptcy court the amount of money he collected for attorney's fees in the proceeding. As the respondent admits, his conduct violated DR 1–102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 1–102(A)(5) (a lawyer shall not engage in conduct prejudicial to the administration of justice); DR 2–106(A) (a lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee); and DR 9–102(B)(3) (failure to render appropriate accounts to the client regarding the client's property).

The Ray bankruptcy matter has been closed, and any restitution by the respondent will require that the

proceeding be reopened and that the respondent's refund be paid to Ray's creditors. The respondent has agreed to take action and enter into an agreement with the bankruptcy trustee and make payments on the amount of restitution owed prior to reinstatement.

### B

Dwight Fox retained the respondent in August 1991 and delivered to the respondent an original promissory note payable to the client's father. The amount remaining due on the note was $32,353.53, plus collection costs. In June 1992, the lawyer for Connie Fox, the client's former spouse, wrote the respondent a letter explaining Connie Fox's authority to collect on the note, and requesting that the respondent deliver the note to the lawyer. The respondent did not reply to the lawyer's letter, and the lawyer discovered that the respondent's office telephone was disconnected. A second lawyer for Connie Fox wrote to the respondent in July 1992, and asked for delivery of the promissory note. The second lawyer received no reply from the respondent, and became concerned because Dwight Fox's father was in his eighties and a lost instrument bond would be difficult to obtain. The day after the second lawyer filed a request for investigation with the office of Disciplinary Counsel, the respondent called the lawyer about the note, and subsequently delivered the promissory note to the second lawyer on August 20, 1992. As the respondent has admitted, his conduct violated DR 1–102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on the lawyer's fitness to practice law), and DR 6–101(A)(3) (a lawyer shall not neglect a legal matter entrusted to the lawyer).

### C

On February 6, 1992, Ron Lindsey consulted the respondent about filing a bankruptcy petition. Lindsey paid the respondent a total fee of $667, including the filing fee. The respondent told Lindsey that the petition would be filed in April or May, 1992, but Lindsey did not hear further from the respondent. After Lindsey filed a request for investigation with the Office of Disciplinary Counsel,

the respondent told Lindsey that he would file the petition after reviewing it to determine if it was still accurate. The respondent nevertheless failed to return Lindsey's subsequent telephone calls. The respondent has stipulated that his failure to communicate with Lindsey and failure to file the bankruptcy petition in a timely manner violated DR 6–101(A)(3) (neglect of a legal matter).

## D

The respondent was retained in October 1987 to represent the estate of Elnora Long. Lois Daniels was the personal representative of the estate. Daniels located a purchaser for Long's former residence in the spring of 1992, and she asked the respondent to obtain new letters of administration so that she could transfer title properly. Although the new letters of administration were apparently issued on April 30, 1992, they were not forwarded to Daniels. When Daniels discovered title problems with other real property that Long had sold prior to her death, she asked the respondent to resolve the title problems. The respondent reviewed the documents but did not finalize the matter. The respondent admits that his failure to send the letters of administration to the personal representative and his failure to communicate with her regarding the legal matters she had referred to him violated DR 6–101(A)(3) (neglect of a legal matter).

## E

The respondent was hired as counsel for the estate of Christine Lawson in June 1991. In March 1992, the respondent notified the personal representative of the estate, Frank Wojtaha, that almost all of the paper work in the probate case was finished and would be filed soon. In April 1992, the respondent again told Wojtaha that the documents were ready to be filed. When Wojtaha unsuccessfully tried to call the respondent, he discovered that the respondent's telephone had been disconnected and that the office was deserted. The personal representative obtained another attorney who finalized the estate in a timely manner. The respondent's failure to communicate

with the personal representative and to timely finalize the estate violated DR 6–101(A)(3) (neglect of a legal matter).

### F

On August 22, 1991, Walter Sales retained the respondent to represent him in a Chapter 7 bankruptcy proceeding. The respondent and Sales agreed on a $667 flat fee to handle the matter, but the respondent subsequently demanded and received an additional $841.35 to complete the bankruptcy. The matter was submitted to the El Paso County Fee Dispute Arbitration Committee for binding arbitration. The Committee ordered the respondent to refund the $841.35, but the respondent did not comply. As the respondent has admitted, he charged his client a clearly excessive fee, contrary to DR 2–106(A), and also violated DR 9–102(B)(4) by failing to promptly return funds owed to the client.

Further, by failing to respond to the request for investigation filed in the Sales matter, the respondent violated C.R.C.P. 241.6(7) (failure to respond to a request by the grievance committee without good cause shown, or obstruction of the committee or any part thereof in the performance of its duties constitutes ground for lawyer discipline).

### G

Jose Archuleta hired the respondent in May 1991 to represent him in a pending dissolution of marriage proceeding. The dissolution presented no custody issue and few property issues. Between May 1991, and February 1992, the respondent charged his client $8,752.30. The client paid the respondent $5,950 and signed a promissory note for another $1,300. The respondent has stipulated that at least $6,252 of the fee he charged Archuleta was clearly excessive.

Archuleta hired another lawyer who sent the respondent a letter seeking a refund of the excessive fee and a cancellation of the promissory note. When the respondent did not reply, the lawyer filed an action in county court against the respondent. The court entered a default

judgment against the respondent for $4,500 and ordered that the promissory note be canceled and that the respondent return the client's file. The respondent did not comply with the judgment and orders of the county court. The assistant disciplinary counsel has stipulated, however, that the respondent has now settled all monetary claims with Archuleta's bankruptcy estate and has returned the client's file and canceled the promissory note. The respondent admits that his conduct violated DR 2–106(A) (charging a clearly excessive fee) and Rule of Professional Conduct (R.P.C.) 1.16(d) (upon termination of representation, a lawyer shall take reasonable steps to protect a client's interests, including surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned); R.P.C. 3.4 (c) (knowingly disobeying an obligation under the rules of a tribunal); and R.P.C. 8.4(d) (knowingly engaging in conduct prejudicial to the administration of justice).

The respondent also stipulated that he failed to cooperate with the disciplinary investigator in this matter, contrary to C.R.C.P. 241.6(7).

The Nebraska Counsel for Discipline filed a motion for reciprocal disciplinary proceedings, and Kile W. Johnson was appointed referee.

On December 15, 1994, Respondent was ordered to show cause why he should not be the subject of appropriate discipline which could include disbarment. On January 13, 1995, he submitted a "Show of Cause" and subsequently submitted an "Amended Show of Cause" on March 30, 1995.

A pretrial conference was held by the referee on May 26, 1995. The referee entered an order directing that the trial of this matter would be held July 6, 1995. On June 19, 1995, the referee sent a notice to the relator and Respondent advising that if accommodation were necessary to participate in the July 6, 1995, trial, notice should be given to the referee so that appropriate arrangements could be made.

Trial was held on July 6, 1995. Evidence was adduced by the relator, and the referee continued the trial indefinitely to allow

the referee time to attempt to contact Respondent through the use of the telecommunications device for the deaf (TDD) number listed on Respondent's letterhead. Immediately following the hearing, the referee, with assistance of his secretary and an employee of the Nebraska Commission for the Hearing Impaired, contacted Respondent's TDD.

After awaiting a response from Respondent to the TDD transmission, the referee submitted his report on July 31, 1995. The referee found that Respondent had been found guilty of misconduct and suspended by the Colorado Supreme Court, and recommended that a concurrent 3–year suspension be imposed by this court.

## ASSIGNMENTS OF ERROR

No exceptions were taken to the referee's report by either the relator or Respondent.

## STANDARD OF REVIEW

In the context of reciprocal attorney disciplinary proceedings, it is generally held that a judicial determination of attorney misconduct in one state is conclusive proof of guilt and is not subject to relitigation in the second state. However, the second state is entitled to make an independent assessment of the facts and an independent determination of the attorney's fitness to practice law in that state and of what disciplinary action is appropriate to protect the interests of the state. *State ex rel. NSBA v. Ogborn*, 248 Neb. 767, 539 N.W.2d 628 (1995); *State ex rel. NSBA v. Dineen*, 235 Neb. 363, 455 N.W.2d 178 (1990).

A proceeding to discipline an attorney is a trial de novo on the record, in which the Supreme Court reaches a conclusion independent of the findings of the referee, provided, where credible evidence is in conflict on a material issue of fact, the Supreme Court considers and may give weight to the fact that the referee heard and observed the witnesses and accepted one version of the facts rather than another. *State ex rel. NSBA v. Schmeling*, 247 Neb. 735, 529 N.W.2d 799 (1995). The Supreme Court, in its de novo review of the record, must find that the particular complaint has been established by clear and convincing evidence in order to sustain it against an attorney in

a disciplinary proceeding. *State ex rel. NSBA v. Veith*, 238 Neb. 239, 470 N.W.2d 549 (1991).

## ANALYSIS

Respondent stipulated to the violations in Colorado and the conclusions of that court. He has not argued that his due process rights were violated or that the evidence was insufficient. We find that the complaint has been established by clear and convincing evidence.

Next, we must determine the appropriate discipline. To determine whether and to what extent discipline should be imposed, it is necessary that the following factors be considered: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present or future fitness to continue in the practice of law. *State ex rel. NSBA v. Gleason*, 248 Neb. 1003, 540 N.W.2d 359 (1995); *State ex rel. NSBA v. Veith, supra.*

A respondent bears the burden of showing that the discipline to be imposed upon him or her should be less severe than that imposed in the first state. *State ex rel. NSBA v. Dineen, supra.*

The majority of the violations to which Respondent stipulated involved negligence. This court has consistently held that an attorney who neglects a matter entrusted to him has failed to act competently and is guilty of unprofessional conduct. *State ex rel. NSBA v. Carper*, 246 Neb. 407, 518 N.W.2d 656 (1994); *State ex rel. NSBA v. Barnett*, 243 Neb. 667, 501 N.W.2d 716 (1993); *State ex rel. NSBA v. Copple*, 232 Neb. 736, 441 N.W.2d 894 (1989); *State ex rel. NSBA v. Doerr*, 216 Neb. 504, 344 N.W.2d 464 (1984); *State ex rel. NSBA v. Divis*, 212 Neb. 699, 325 N.W.2d 652 (1982).

In this state, Respondent did not satisfy his burden of showing that the discipline imposed in Nebraska should be less severe than that imposed in Colorado. In fact, aside from the filed "Show of Cause" and "Amended Show of Cause," he has all but ignored the other disciplinary proceedings against him in this state.

This is especially troublesome, because Respondent was originally charged in Colorado with neglecting duties and failing to cooperate with the disciplinary investigation. Thus, the proceedings in this state compound what transpired in Colorado. We find, therefore, that a 3–year suspension is not sufficient considering the inaction of Respondent in this state. The attitude of a respondent generally and the respondent's present or future fitness to continue in the practice of law are factors in the analysis of any discipline case. *Gleason, supra.* Respondent in this case has ignored his own disciplinary proceedings. This court should not allow such present neglectful and uncooperative practices to possibly harm the public in this state in the future.

It is also necessary that we consider mitigating factors in determining the appropriate discipline imposed on an attorney. *State ex rel. NSBA v. Miller,* 225 Neb. 261, 404 N.W.2d 40 (1987). Respondent claims that stuttering made it nearly impossible for him to communicate with his clients, which ultimately resulted in the charges against him. The flaw in Respondent's argument resides in his own "Amended Show of Cause," through which he demonstrates that he can competently express himself through the written word. He failed to respond to further disciplinary proceedings in this state when he had the opportunity to do so in writing. We therefore find that the evidence of Respondent's stuttering is not a sufficient mitigating factor to modify the degree of punishment we determine here.

## CONCLUSION

After an independent assessment of the facts and an independent determination of Respondent's fitness to practice law, we find the referee's recommendation of a 3–year suspension inadequate. Respondent is disbarred from the practice of law in Nebraska, effective immediately.

JUDGMENT OF DISBARMENT.

WHITE, C.J., and FAHRNBRUCH, J., not participating.