STATE OF NEBRASKA EX REL. NEBRASKA STATE BAR ASSOCIATION, RELATOR, V. VESTER L. VAN, RESPONDENT.

556 N.W.2d 39

Filed December 6, 1996.   No. S-95-154.

John W. Steele, Assistant Counsel for Discipline, for relator.

No appearance for respondent.

WHITE, C.J., CAPORALE, LANPHIER, WRIGHT, and CONNOLLY, JJ.

PER CURIAM.

This is an attorney reciprocal discipline case in which the relator, Nebraska State Bar Association, seeks to have this court discipline the respondent, Vester L. Van, a member of the relator association, on the ground that he was disciplined in Illinois for attorney misconduct in that state.

## SCOPE OF REVIEW

A proceeding to discipline an attorney is a trial de novo on the record, in which this court reaches a conclusion independent of the findings of the referee; provided, however, that where the credible evidence is in conflict on a material issue of fact, this court considers and may give weight to the fact that the referee heard and observed the witnesses and accepted one version of the facts rather than another. *State ex rel. NSBA v. Johnson*, 249 Neb. 563, 544 N.W.2d 803 (1996); *In re Appeal of Lane*, 249 Neb. 499, 544 N.W.2d 367 (1996); *State ex rel. NSBA v. Woodard*, 249 Neb. 40, 541 N.W.2d 53 (1995).

## FACTS

Van was admitted to practice law in Nebraska on January 22, 1973, and on May 1, 1980, was admitted to and began to practice law in Illinois, where the events at issue took place.

### WHITE MATTER

Michael White was involved in an automobile accident in which he incurred medical bills in the sum of $2,300. Approximately 2 weeks after the accident, he hired Van to represent him for any claims resulting from the accident, and 2 years later Van filed an action. Some 10 months after the action was filed, Van indicated that the case was still pending, when in fact it had been dismissed approximately 6 months earlier for want of prosecution.

After White made a complaint to the Illinois disciplinary commission, Van initiated and scheduled a meeting with White to discuss settlement. At that meeting, Van told White that his case had been dismissed and that Van had waited so long to inform White because Van had no indication that the case had been closed. Van offered White a $750 settlement, which White accepted. White signed a release, which recited a consideration of $4,450.30. Van told White that the figure represented Van's original payment of $2,300 for White's medical bills and the $750, but Van did not explain the source of the additional money, nor did he produce any receipts or invoices evidencing the additional money. In addition to the release, Van drafted and White signed a letter withdrawing White's complaint.

## JONES MATTER

Wayne Jones was involved in an automobile accident which resulted in a claim against him. His insurance company did not acknowledge coverage, and Jones and his wife, Doris, hired Van to assist them in resolving that dispute.

At their first meeting, Van suggested that he would dispose of the case rather quickly by filing an inquiry with the Illinois insurance board. His fee was $700 and was to be paid by the Joneses in two installments. They then issued a $300 check to Van. However, Van claimed he never received the check, so the Joneses issued another check and issued a stop-payment order on the first check. At a meeting wherein the Joneses personally delivered the replacement check to Van, Van told them he had filed a claim in writing with the Illinois insurance board and that he was waiting to hear a response. Upon inquiring of the Illinois insurance department as to Van's efforts on their behalf, the Joneses were told that the department had not received anything from Van.

The replacement check was paid by the Joneses' bank, and the Joneses later paid the balance of the fee. Doris Jones later discovered that the check claimed to have been lost had been cashed by Van or someone in his office. Van stated that he would refund the money, but when the Joneses went to Van's office, he was not present, nor had he left a check for them or instructions to his secretary regarding a refund.

Eventually, another member of Van's office refunded the Joneses' $700, but the $300 representing the cashed first-installment check that had been presumed lost was never refunded.

## MCGHEE MATTER

Joyce McGhee's son, Craig Boyd, was arrested on an alleged residential burglary charge. McGhee hired Van to represent her son, and Van met with Boyd. Van's fee for representing Boyd was $2,500, of which Boyd and McGhee paid Van $1,000 prior to the arraignment. Van failed to appear for the arraignment, and McGhee could not locate him. Boyd's arraignment was continued for 3 days, and McGhee hired another attorney to represent Boyd.

Van telephoned McGhee at 7 a.m. the day of the continued arraignment and stated he had been in an automobile accident. McGhee requested that Van refund her the $1,000 she and Boyd had paid him, but Van stated he had done some work on her account, so McGhee agreed to pay Van for 2 hours of consultation, totaling $250, and Van was to refund her the other $750. Van never refunded the $750 to McGhee or Boyd.

### BRITTON MATTER

After being charged with driving under the influence and other traffic violations, Kenzie Britton retained Van by meeting with and paying $500 to a representative of Van's office, who agreed that Van would defend Britton. Van failed to appear at Britton's arraignment and later refunded Britton $400, keeping the remaining $100 as a retainer fee.

### ILLINOIS PROCEEDINGS

Van was less than cooperative in the Illinois proceedings; he failed to appear at two of the three pretrial conferences, postponed the first date of his deposition because he had not yet retained counsel, subsequently failed to appear at either of two later deposition times, and did not comply with any of the discovery requests. As a consequence, an order was entered which prohibited Van from calling witnesses on his own behalf and barred him from testifying and producing documents. Van did not appear at the Illinois hearing.

The Illinois Supreme Court suspended Van "from the practice of law for one year and until further order," with the condition that he pay $300 restitution to the Joneses, $1,000 to McGhee, and $100 to Britton.

### NEBRASKA PROCEEDINGS

The relator filed a motion for judgment on the pleadings. After Van entered his appearance but failed to respond to our show cause order, we granted the relator's motion to the extent that we ordered Van temporarily suspended from the practice of law in this state pending our further order, and appointed a referee to conduct proceedings "leading to a recommendation to this Court as to the appropriate ultimate sanction to be imposed upon respondent." Van did not appear for the scheduled hear-

ing before the referee and has filed no brief in this court. In keeping with his position of ignoring the rules of his profession, neither has Van complied with the provisions of Neb. Ct. R. of Discipline 16 (rev. 1996) requiring him to file with us an affidavit that he notified his clients of his temporary suspension from the bar of this state.

In addition to receiving evidence of Van's Illinois conduct, the referee was informed by the Assistant Counsel for Discipline that Van had not paid his last year's bar association dues. The referee recommends that we impose the same sanction as imposed by the Illinois Supreme Court.

## ANALYSIS

In the context of reciprocal disciplinary proceedings, a judicial determination of attorney misconduct in one state is generally conclusive proof of guilt and is not subject to relitigation in the second state. However, the judicial determination of misconduct in the first state need not be accepted as conclusive proof of guilt if the offender demonstrates to the court in the second state that the procedure in the first state was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process or that there was such an infirmity of proof concerning the misconduct as to give rise to the clear conviction that the final finding of the court in the first state as to the offender's misconduct cannot be accepted. *State ex rel. NSBA v. Woodard*, 249 Neb. 40, 541 N.W.2d 53 (1995); *State ex rel. NSBA v. Ogborn*, 248 Neb. 767, 539 N.W.2d 628 (1995); *State ex rel. NSBA v. Dineen*, 235 Neb. 363, 455 N.W.2d 178 (1990). Here, there is no claim that Van was deprived of any due process right in Illinois or that there is an infirmity of proof.

However, even if the first state's judicial determination of misconduct is accepted as conclusive proof of guilt, it does not necessarily follow that the offender must be disciplined in the same manner by the second state. The second state is entitled to make an independent assessment of the facts and an independent determination of the offender's fitness to practice law in that state and of what disciplinary action is appropriate to protect the interests of the state. *State ex rel. NSBA v. Woodard, supra; State ex rel. NSBA v. Ogborn, supra; State ex rel. NSBA v.*

*Radosevich*, 243 Neb. 625, 501 N.W.2d 308 (1993); *State ex rel. NSBA v. Dineen, supra.*

We do not concern ourselves with whether Van's handling of the White matter violated Canon 6, DR 6-102, of our Code of Professional Responsibility, which prohibits a lawyer from attempting to exonerate oneself from or limit one's liability to a client for one's personal malpractice. Neither do we consider whether Van misappropriated client funds in violation of Canon 9, DR 9-102, in the sense that he failed to preserve the identity of client funds.

However, from our de novo review, we nonetheless find that the evidence clearly and convincingly establishes that Van violated Canon 1 (lawyer should assist in maintaining integrity and competence of legal profession) and DR 1-102(A)(5) and (6) thereunder, requiring a lawyer not to engage in conduct prejudicial to the administration of justice or in any other conduct adversely reflecting on the lawyer's fitness to practice law; Canon 6 (lawyer should represent client competently) and DR 6-101(A)(3) thereunder, requiring that a lawyer not neglect a legal matter entrusted to the lawyer; and Canon 9 (lawyer should avoid even appearance of professional impropriety) and DR 9-102(B)(3) thereunder, requiring a lawyer to maintain complete records of all funds coming into the lawyer's possession and to render to the client appropriate accounts thereof.

We have consistently held that a lawyer who neglects an entrusted matter has failed to act competently and is guilty of unprofessional conduct. *State ex rel. NSBA v. Johnson*, 249 Neb. 563, 544 N.W.2d 803 (1996); *State ex rel. NSBA v. Carper*, 246 Neb. 407, 518 N.W.2d 656 (1994); *State ex rel. NSBA v. Barnett*, 243 Neb. 667, 501 N.W.2d 716 (1993); *State ex rel. NSBA v. Copple*, 232 Neb. 736, 441 N.W.2d 894 (1989); *State ex rel. NSBA v. Doerr*, 216 Neb. 504, 344 N.W.2d 464 (1984); *State ex rel. Nebraska State Bar Assn. v. Divis*, 212 Neb. 699, 325 N.W.2d 652 (1982).

In a very similar case, *State ex rel. NSBA v. Johnson, supra,* we disbarred an attorney who was charged in Colorado with neglecting duties and failing to cooperate with the disciplinary investigation. Johnson failed to render appropriate accounts to clients, neglected legal matters by failing to file petitions in a

timely manner, failed to communicate with clients regarding their cases, and failed to promptly return funds owed to clients. We found that the Colorado Supreme Court's discipline of a 3-year suspension was not sufficient considering Johnson's failure to respond to this state's disciplinary proceedings. We observed that Johnson's inaction in this state compounded what transpired in Colorado and that this court should not allow such present neglectful and uncooperative practices to possibly harm the public in this state in the future.

Likewise, in *State ex rel. NSBA v. Copple, supra*, we disbarred an attorney who had been retained and paid legal fees in advance by two clients, but who neglected to perform the work for which he was employed. Copple was also charged with neglecting legal matters entrusted to him by three other clients. Finally, he was charged with failure to file appropriate written responses with the Counsel for Discipline concerning the complaints of the clients.

A respondent bears the burden of showing that the discipline to be imposed should be less severe than that imposed in the first state. *State ex rel. NSBA v. Johnson, supra*; *State ex rel. NSBA v. Dineen*, 235 Neb. 363, 455 N.W.2d 178 (1990). Clearly, Van has not satisfied his burden of showing that the discipline imposed in Nebraska should be less severe than that imposed in Illinois. Aside from entering an appearance in these proceedings and filing a motion for additional time within which to file his answer on the show cause order, Van has all but ignored these proceedings, and, like the situations in *Johnson* and *Copple*, his inaction herein compounds what transpired in Illinois. See, also, *State ex rel. NSBA v. Gregory, ante* p. 41, 554 N.W.2d 422 (1996).

Moreover, it is axiomatic that multiple acts of misconduct are distinguishable from isolated incidents and are therefore deserving of more serious sanctions. *State ex rel. NSBA v. Woodard*, 249 Neb. 40, 541 N.W.2d 53 (1995); *State ex rel. NSBA v. Miller*, 225 Neb. 261, 404 N.W.2d 40 (1987).

To determine whether and to what extent discipline should be imposed, this court considers the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the pro-

protection of the public, (5) the attitude of the offender generally, and (6) his or her present or future fitness to continue in the practice of law. *State ex rel. NSBA v. Gregory, supra*; *State ex rel. NSBA v. Ramacciotti,* 250 Neb. 893, 553 N.W.2d 467 (1996); *State ex rel. NSBA v. Johnson, supra.*

Under the circumstances, we consider the referee's recommendation not to be commensurate with the seriousness of Van's misconduct.

## CONCLUSION

We grant the relator's motion for judgment on the pleadings and order Van disbarred in Nebraska, effective immediately.

JUDGMENT OF DISBARMENT.

FAHRNBRUCH and GERRARD, JJ., not participating.