560 N.W.2d 150 (1997)
252 Neb. 40
STATE of Nebraska EX REL. NEBRASKA STATE BAR ASSOCIATION, Relator,
v.
Thomas R. ZAKRZEWSKI, Respondent.
No. S-95-994.
Supreme Court of Nebraska.
March 14, 1997.
*151 Clark J. Grant, of Grant, Rogers, Maul & Grant, for relator.
Thomas R. Zakrzewski, pro se.
WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, and GERRARD, JJ., and BUCKLEY, District Judge.
PER CURIAM.
Formal charges against respondent, Thomas R. Zakrzewski, were filed in this court on September 15, 1995. The allegations set forth concerned respondent's signing of an affidavit containing an allegedly false statement *152 of fact. Respondent was therefore charged with violating the following provisions of Canon 7 of the Code of Professional Responsibility:
DR 7-102 Representing a Client Within the Bounds of the Law.
(A) In his or her representation of a client, a lawyer shall not:
(1) File a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of a client when the lawyer knows or when it is obvious that such action would serve merely to harass or maliciously injure another.
. . . .
(5) Knowingly make a false statement of law or fact.
This matter was heard by a referee on March 14 and 15, 1996. In his report, the referee found that respondent knowingly made a false statement of fact in his affidavit and therefore violated DR 7-102(A)(1) and (5). In addition to these findings, the referee also noted his concern with respondent's attitude, as expressed in his brief to the referee, toward both the opposing counsel and the Nebraska State Bar Association. The referee made no recommendation regarding an appropriate penalty. Exceptions to the referee's report were filed by respondent on June 5, 1996.

STANDARD OF REVIEW
A proceeding to discipline a lawyer is a trial de novo on the record, in which the Nebraska Supreme Court reaches a conclusion independent of the findings of the referee; provided, however, that where the credible evidence is in conflict on a material issue of fact, this court considers and may give weight to the fact that the referee heard and observed the witnesses and accepted one version of the facts rather than another. State ex rel. NSBA v. Johnston, 251 Neb. 468, 558 N.W.2d 53 (1997); State ex rel. NSBA v. Van, 251 Neb. 196, 556 N.W.2d 39 (1996).

FACTS
Respondent was admitted to the practice of law in the State of Nebraska on September 25, 1991. At all times relevant to this matter, respondent was engaged in the private practice of law in Humphrey, Nebraska. In order to get a better understanding of the disciplinary charges brought against respondent, it is necessary to examine the pertinent background facts.

UNDERLYING DIVORCE ACTION AND EVENTS OF JUNE 1, 1993
The underlying impetus of this disciplinary action involves respondent's representation of his brother, Evan Zakrzewski, in a divorce proceeding in the early part of 1993. Representing Evan Zakrzewski's former wife, Ronda Raff, in the divorce proceedings was Forrest Peetz, a practicing attorney in Holt County. Pursuant to a stipulation between Evan Zakrzewski and Raff, the district court for Holt County entered an order on March 30, 1993, awarding permanent custody of the parties' minor child, Heath, to Raff, who resided in Aberdeen, South Dakota. Evan Zakrzewski, then a resident of O'Neill, Nebraska, was to have visitation rights once a month from Tuesday until Sunday, for 2 months during the summer, and for alternating holidays.
Raff sent Heath to O'Neill several days prior to June 1, 1993, for his monthly visit with Evan Zakrzewski. Because Evan Zakrzewski was out of the state at the time for business purposes, Heath spent several days with Zakrzewski's parents, who also reside in O'Neill. Evan Zakrzewski returned to O'Neill on May 29. Despite requests from Raff, Evan Zakrzewski refused to return Heath to South Dakota on June 1. Although Raff contended the weeklong visitation period ended on that date, Evan Zakrzewski refused to comply, arguing that he had not seen Heath much in the last 8 months.
Upon Evan Zakrzewski's refusal to return Heath, Raff contacted Peetz for assistance. According to telephone records, Raff telephoned Peetz three times on June 1. Peetz testified that he told Raff she should contact the clerk of the district court and the sheriff's office to resolve the matter. Peetz was eventually contacted by the sheriff's office and by Tom Herzog, Holt County Attorney, in an attempt to seek information regarding the terms of the divorce decree. Telephone records introduced at trial establish that all *153 calls between Peetz and county officials were made to Peetz' office.
Learning of the situation, Herzog examined the divorce decree provisions concerning visitation and called the district court judge who granted the divorce decree. According to Herzog, the judge directed him to tell the sheriff to tell Evan Zakrzewski to give the child back. Following the orders of Herzog, Holt County Sheriff Charles R. Fox relayed this information to his deputies. Fox specifically stated that he instructed his deputies not to use physical force or intimidation against Evan Zakrzewski.
According to testimony from Holt County Deputy Alan Rowse, Evan Zakrzewski was then asked to return Heath that day by 4 p.m. Not surprisingly, Evan Zakrzewski recounts a different picture; one in which he was physically threatened with physical danger and jail time if he refused to return Heath that day. After Evan Zakrzewski's contact with Rowse, he called his brother, respondent herein, for advice. Respondent proceeded to make calls to Peetz, Herzog, and the sheriff's office to halt the return of Heath. In each instance, respondent made it a point to state that he would sue each individual if Evan Zakrzewski was forced to return Heath to South Dakota that day. Ultimately, Evan Zakrzewski complied with the requests of the law enforcement officials, and Heath was transported to Raff in South Dakota that evening by a third party.

ALLEGATIONS OF CHILD ABUSE AND AFFIDAVIT
Respondent followed up on his threats and filed a federal civil rights action against Peetz, Fox, Rowse, Herzog, and other Holt County officials. This suit alleged that the defendants named therein violated Evan Zakrzewski's constitutional rights while acting under color of state law. Eventually, summary judgment was granted in favor of all defendants. See Zakrzewski v. Fox, 87 F.3d 1011 (8th Cir.1996). Prior to these dismissals and during the discovery period, respondent ascertained that Raff had filed a report of child abuse with the South Dakota Department of Social Services (South Dakota DSS) on June 2, 1993, the day after Heath was returned from his visit with Evan Zakrzewski. A letter from the South Dakota DSS dated June 10, 1993, was sent to Rowse informing him that the allegation would be investigated by Child Protective Services in Nebraska. A copy of this letter was also sent to Peetz. During the disciplinary proceedings, Raff testified that she wanted Peetz to have a copy of the letter so that it could be placed in her divorce file.
Upon discovering the abuse allegation, respondent filed a motion in the district court for Holt County requesting an order to show cause as to why Raff and Peetz should not be held in contempt for violating the March 30, 1993, divorce decree because the abuse allegation was false and unsubstantiated. In support of the motion regarding Peetz, respondent prepared his own affidavit, wherein he alleged as follows:
That during discovery being conducted for a Federal Civil Rights action I discovered that Ronda Raff, in concert with Forrest Peetz and at his direction, in order to injure and vilify the petitioner and to attempt to interfere with petitioner's rights granted by this court, had filed a false and malicious claim of child abuse of Heath Alexander Zakrzewski....
(Emphasis supplied.)
A hearing on the motion was had in the district court for Holt County on October 13, 1994. After the hearing, the court refused to issue an order requiring Peetz to show cause why he should not be held in contempt. In reaching this conclusion, the court noted that the only evidence supporting respondent's contention that Peetz told Raff to file a false child abuse allegation was the June 10, 1993, letter from the South Dakota DSS that was copied to Peetz. According to the judge, that fact alone did not support respondent's contention.

DISCIPLINARY PROCEEDINGS
Peetz thereafter filed a complaint with the Nebraska State Bar Association, alleging that respondent violated DR 7-102(A)(1) and (5) in that he signed an affidavit containing a false statement of fact. Although the Counsel for Discipline of the Nebraska State Bar Association dismissed the complaint, Peetz appealed to the Committee on Inquiry of the Third Disciplinary District. The committee *154 held a hearing and thereafter filed the formal charges now before us.
A hearing was had before a referee on March 14 and 15, 1996. In his defense, respondent argued that the circumstantial evidence he had at the time he signed the affidavit supported his allegation that Peetz directed Raff to file the child abuse allegation. The evidence respondent referred to was essentially the following: (1) the South Dakota DSS letter addressing the abuse allegation that was copied to Peetz, (2) the fact that respondent had threatened Peetz with a federal civil rights action the day before the report was made (thereby providing motive), and (3) the three telephone calls Raff made to Peetz' office on June 1, 1993 (thereby providing an opportunity for Peetz to direct Raff's actions). Peetz testified during the hearing that he in no way solicited the letter from the South Dakota DSS and that he did not suggest that Raff file a false abuse allegation. Raff also testified that she filed the report after she observed bruises on Heath on June 2, and not at the direction of Peetz. Furthermore, Raff stated that the reason Peetz was sent a copy of the June 10, 1993, letter from the South Dakota DSS was because she wanted him to have a copy for her divorce file.
As noted above, the referee concluded that respondent did, in fact, violate the disciplinary rules in question by signing the affidavit. In reaching this conclusion, the referee noted that the information available to respondent at the time he signed the affidavit did not support the allegation that Peetz instructed Raff to file a false child abuse allegation. Because no evidence existed that would substantiate the allegation, the referee concluded that respondent knowingly stated a false statement of fact in the affidavit to harass or maliciously injure Peetz. The report did not recommended a penalty.
In addition to addressing the formal charges against respondent, the referee also stated his concern with respondent's attitude to Peetz, other attorneys, and the Nebraska State Bar Association in general. Prompting the referee's concerns was respondent's brief to the referee, wherein he referred to Raff and Peetz as "congenital liars" and characterized the disciplinary proceedings before the Committee on Inquiry as a "sham proceeding." Respondent also wrote that the Committee on Inquiry told witnesses to disavow previous testimony and that the Nebraska State Bar Association told respondent that it "was going to destroy [respondent's] reputation and cause [him] considerable financial loss including the right to earn a living as an attorney." Brief for respondent to referee at 1.
In response to the referee's findings, respondent has filed exceptions with this court.

ANALYSIS
A disciplinary complaint against an attorney will be sustained only if this court finds it to be established by clear and convincing evidence. State ex rel. NSBA v. Johnston, 251 Neb. 468, 558 N.W.2d 53 (1997). Any violation of the ethical standards relating to the practice of law, or any conduct which tends to bring the courts or legal profession into disrepute, constitutes grounds for suspension or disbarment. State ex rel. NSBA v. Johnston, supra; State ex rel. NSBA v. Doerr, 216 Neb. 504, 344 N.W.2d 464 (1984).
For purposes of simplicity, we will address each disciplinary rule in question separately.

CANON 7, DR 7-102(A)(5)
In representing a client, an attorney shall not knowingly make a false statement of law or fact. For purposes of our review, we must determine whether respondent violated this rule in stating, in a sworn affidavit, that Raff filed a false and malicious claim of child abuse "in concert with Forrest Peetz and at his direction, in order to injure and vilify [Evan Zakrzewski]."
It is apparent that respondent possessed no actual knowledge that Peetz told Raff to file a child abuse allegation with the South Dakota DSS. Although respondent failed to discuss the allegations with either Raff or Peetz prior to signing the affidavit, the testimony of both at the disciplinary hearing makes it clear that Raff filed the report after she discovered bruises on Heath, and not at the direction of Peetz. Despite his failure to *155 question either Raff or Peetz or to gather any direct evidence supporting his allegation, respondent signed the affidavit based on his belief that the circumstantial evidence in his possession supported his allegation.
Our examination of the record leads us to conclude that the circumstantial evidence respondent refers to simply does not support his allegation against Peetz. As set forth above, the evidence respondent relied upon in creating the affidavit consisted of the fact that a letter from the South Dakota DSS was copied to Peetz. Respondent argues that the South Dakota DSS would send a copy of such a letter only to an actual complainant, in light of confidentiality requirements. We do not agree. According to the testimony of Raff, Peetz, as her divorce attorney, was sent a copy of the letter in order that it could be included in Raff's divorce file. Peetz testified repeatedly that he in no way solicited the letter or instructed Raff to file the claim. Had respondent made further inquiries, he would have discovered these facts.
The fact that Raff made several telephone calls to Peetz the day before the abuse claim was filed also provides no justification for respondent's allegation against Peetz. Respondent argues that these telephone conversations provided Peetz with the opportunity to direct Raff's actions regarding the abuse allegation. However, in respondent's affidavit, he makes no mention of knowledge as to the contents of those conversations. The testimony offered by Raff and Peetz at the disciplinary hearing establishes that Peetz only told Raff to contact the clerk of the district court and the sheriff's office for assistance in getting Heath back. Both testified that Peetz never told Raff to file the claim. Once again, had respondent made appropriate inquiries, he would have been made aware of these facts prior to signing the affidavit.
Finally, respondent contends that his threatening Peetz on June 1, 1993, with a federal civil rights lawsuit provided Peetz with a motive to instruct Raff to make a false abuse allegation against Evan Zakrzewski. We find this argument unrealistic at best. We are again faced with Peetz' testimony that he had nothing to do with the abuse report. In conformance with his repeated failures to thoroughly investigate, respondent did not attempt to become aware of Peetz' position until after the affidavit was signed.
Faced with both the evidence respondent had at the time he signed the affidavit and the evidence he would have possessed had he done a thorough investigation, we simply cannot conclude that he set forth truthful facts in his affidavit.
Respondent would nevertheless have us find that he did not violate DR 7-102(A)(5) because there was no showing that he "knowingly" made false statements of fact. In other words, respondent argues that his subjective belief that Peetz instructed Raff to file the abuse allegation at the time he signed the affidavit makes it impossible to establish he made a knowingly false statement.
The definition of "knowingly" for purposes of DR 7-102(A)(5) was set forth by this court in State ex rel. Nebraska State Bar Assn. v. Holscher, 193 Neb. 729, 230 N.W.2d 75 (1975). At issue in Holscher was whether a county attorney violated DR 7-102(A)(5) when he received attorney fees for preparing tax foreclosure petitions when a statute provided that fees could be paid only when a decree of foreclosure was entered. Holscher argued that he was unaware of the statute and thus did not "knowingly" submit a claim for fees to the county which contained a false statement of law or fact. This court disagreed, stating:
Respondent filed his claim for services prematurely, in some instances even before a tax foreclosure was even filed. We cannot believe that respondent would not know this was improper procedure. At the very least it would be conduct so carelessly and recklessly negligent that we would have to find respondent did it knowingly. Otherwise we might as well forget the Code of Professional Conduct.
(Emphasis supplied.) Id. at 735-36, 230 N.W.2d at 79.
Adoption of respondent's position would, in essence, allow an attorney to make any factual allegation provided he or she believed it to be true, regardless of an examination *156 of the surrounding circumstances. We once again hold that for purposes of attorney disciplinary cases, the term "knowingly" shall include conduct that is so carelessly and recklessly negligent as to lead only to the conclusion that it was done knowingly.
Applying this definition to the instant case leaves no doubt that respondent violated DR 7-102(A)(5). Absolutely no effort was made on behalf of respondent to substantiate his allegations against Peetz. Such a failure to properly investigate rises to the level of extreme carelessness and surely constitutes recklessly negligent conduct. Had respondent made the appropriate and quite obvious investigation into the abuse allegation, he would have recognized that the evidence simply does not support the allegation that Peetz told Raff to file a false claim. Absent such proper investigation, we have little difficulty in concluding that respondent knowingly made a false statement of fact in his affidavit in violation of DR 7-102(A)(5).

CANON 7, DR 7-102(A)(1)
Our next inquiry requires us to determine if respondent's actions also violated DR 7-102(A)(1). An attorney violates this provision if he or she asserts a position or takes any action on behalf of a client when it is known that such action will only serve to harass or maliciously injure another.
The record before us establishes the animosity of respondent toward Peetz. At the time respondent filed the affidavit in question, he was under investigation by the Nebraska State Bar Association for filing the federal civil rights complaint against Peetz. Respondent's response to that investigation reveals his malicious attitude toward Peetz. This is especially apparent upon the examination of a letter written to Peetz' attorney in the civil rights action. The letter stated:
It appears that your client's desire to harm myself and other members of my family, and the propensity of your client to attempt to misuse the legal system and the Bar Association, are going to come back to haunt you....
Please be advised that I will being [sic] filing a motion for sanctions and attorney fees against both you and your client. Your client's contempt for the U.S. Federal Court for the District of Nebraska is obviously displayed by the complaint filed against me with the Nebraska State Bar Association.... I will also ask the Court to incarcerate Mr. Peetz for his contempt.
The lack of evidence upon which respondent filed the affidavit coupled with respondent's obvious animosity toward Peetz clearly supports the referee's determination that the affidavit and corresponding motion for an order to show cause were meant to harass or injure Peetz, in violation of DR 7-102(A)(1).

IMPOSITION OF PENALTY
Having determined the evidence clearly and convincingly establishes that respondent's actions in signing the affidavit were violative of DR 7-102(A)(1) and (5), we now address the appropriate disciplinary measures that must be taken. To determine whether and to what extent discipline should be imposed, it is necessary that the following factors be considered: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) his or her present or future fitness to continue in the practice of law. State ex rel. NSBA v. Johnston, 251 Neb. 468, 558 N.W.2d 53 (1997); State ex rel. NSBA v. Van, 251 Neb. 196, 556 N.W.2d 39 (1996). In the determination of an appropriate penalty, we must also consider any mitigating factors. See State ex rel. NSBA v. Johnson, 249 Neb. 563, 544 N.W.2d 803 (1996).
The making of false statements by an attorney obviously reflects negatively on both that attorney's ability to practice law and the reputation of the entire bar in general. Such a practice must be deterred by this court. In addition, we are also concerned with the attitude and reactions of respondent throughout the entire disciplinary process.
Respondent's overall negative attitude in this matter is clearly reflected in his brief to this court in which he refers to Peetz as a "liar" on more than 16 occasions, states that Herzog lied under oath, and makes repeated remarks that all witnesses called by the Nebraska State Bar Association lied at their *157 own volition or at the direction of the association. In fact, respondent goes so far as to state that "[c]learly the Third District Committee on Inquiry purposely and knowingly solicited perjury on March 2, 1995, in order to obstruct my prosecution of a Federal civil rights action." Brief for respondent at 24. At one point in his brief, respondent states his belief that the Nebraska State Bar Association has, through its agents, become a criminal organization obstructing federal civil rights actions. In fact, respondent went so far as to threaten the committee members with a civil action under the federal Racketeer Influenced and Corrupt Organizations Act for their actions. Respondent also refers to the committee prosecutor as a "prosecutor, obstructor of justice, tortfeasor and criminal." Reply brief for respondent at 1.
Respondent concludes with the following:
This Court should require the State of Nebraska, ex rel. Nebraska State Bar Association to pay me the sum of Five Million Dollars ($5,000,000) for the damages sustained by me and proven in the record.... Anything less than $5,000,000 will do nothing but continue the three year rape that has been conducted under the color of this Court's black robes.
Id. at 11.
The repeated derogatory and inflammatory statements made by respondent both during hearings and through briefing cannot be ignored and will not be tolerated. Because such tactics reflect respondent's overall fault-finding attitude in this matter, we take them into consideration in determining an appropriate penalty.
Concerning the existence of mitigating factors, our de novo examination of the record leads us to conclude that respondent is relatively inexperienced in the practice of law. Furthermore, the underlying actions giving rise to this action, namely respondent's representation of his brother in personal matters regarding his brother's child, establishes the possibility that respondent was so personally involved that a proper level of objectivity was lost. Taking these factors into consideration, we hereby suspend respondent from the practice of law for a period of 18 months, effective immediately. Respondent is directed to pay costs in accordance with Neb.Rev.Stat. §§ 7-114 and 7-115 (Reissue 1991).
JUDGMENT OF SUSPENSION.