STATE OF NEBRASKA EX REL. NEBRASKA STATE BAR ASSOCIATION, RELATOR, V. TERRENCE D. MALCOM, RESPONDENT.
561 N.W.2d 237

Filed April 4, 1997.   No. S-96-489.

■■■■■■

Robert B. Creager, of Anderson, Creager & Wittstruck, P.C., for respondent.

Dennis G. Carlson, Counsel for Discipline, for relator.

WHITE, C.J., CAPORALE, CONNOLLY, and GERRARD, JJ., and ENSZ, D.J., and BLUE, D.J., Retired.

PER CURIAM.

This is an attorney discipline case in which the relator, Nebraska State Bar Association (NSBA), seeks to disbar the respondent, Terrence D. Malcom, on the basis that he violated those sections of the Nebraska Code of Professional Responsibility pertinent to the maintenance of trust funds, specifically Canon 1, DR 1-102, and Canon 9, DR 9-102. The referee's report recommends disbarment of Malcom. Malcom takes exception to this recommendation, arguing that the evidence was insufficient to show a disciplinary rule violation and that the referee's recommendation of disbarment was excessive.

## BACKGROUND

Malcom was admitted to the Nebraska bar in 1974. During the dates at issue, Malcom practiced law in McCook, Nebraska, with the Colfer firm, where he was also a partner. The Colfer firm maintained one trust account at the McCook National Bank. Malcom opened two additional trust accounts at AmFirst Bank and First National Bank, both in McCook. Malcom stated that he opened these additional accounts because he and/or his firm provided legal services to each of the banks and a member of the firm was on the board of directors of each of the banks. These accounts were used only by Malcom because he was the only one permitted to draw funds from the accounts.

Malcom did not reconcile the accounts on a regular basis. Malcom received monthly statements from both additional

accounts but did not notice a negative balance. On October 22, 1995, the NSBA, by and through its Committee on Inquiry of the Sixth Disciplinary District, recommended filing formal charges against Malcom.

Formal charges were filed against Malcom on May 9, 1996. Count I: Between March and June 1989, Malcom placed client funds in his attorney trust account at First National and failed to maintain a balance in the account equal to or greater than those client funds. Specifically, on March 30, $14,756.47 from the Ruth D. Masters estate was deposited in the First National trust account, but on June 2 and 5, the First National trust account had a negative balance. On July 31, Malcom issued five distribution checks out of the First National trust account totaling $9,535.11. These checks related to the Masters estate. Payment on these checks was possible due to the deposit of funds unrelated to the Masters estate.

Count II: Malcom represented Dr. James S. Carson and served as the personal representative for the Charles A. Barber estate. Dr. Carson settled his case with the Federal Deposit Insurance Corporation by agreeing to pay $130,000 to Grand Ho, Inc. Grand Ho, by agreement, would then pay $130,000 to the Federal Deposit Insurance Corporation. On March 18, 1991, Malcom issued a check in the amount of $130,373.47 payable to the "Malcom Trust Acct." out of the Barber estate checking account. This check was then deposited on March 18 into Malcom's trust account at AmFirst. At the time of said deposit, the trust account balance was $916.91. On March 26, Malcom wrote check No. 1334 out of the AmFirst trust account payable to AmFirst in the amount of $120,000, with the notation "Grand Ho, Inc. wire" on the memo portion of the check. The deposit from the Barber estate made it possible for the Grand Ho wire to be honored.

On May 17, 1991, Malcom issued check No. 1384 in the amount of $10,000 payable to AmFirst out of his AmFirst trust account. This memo portion stated "Grand-Ho." This count alleged that Malcom could not make a reasonable explanation as to why funds paid to him for his representation of the Barber estate were used to pay the Carson settlement.

Count III: Malcom represented Howard B. and Charlotte A. Wyss, husband and wife, regarding a real estate purchase. The Wysses were to pay $53,000 for the real estate, paying $1,000 as earnest money and $52,000 on closing. On June 11, 1991, the Wysses' earnest money of $1,000 was deposited into Malcom's AmFirst trust account. On June 28, the AmFirst trust account had a balance of $760.48; however, no funds related to the Wysses' transaction had been paid from the account. On or about July 30, the Wysses gave Malcom $52,000 for the real estate purchase. On July 30, a $52,000 deposit was made into Malcom's AmFirst trust account, with a notation on the deposit slip which read "H. Wyss." At the time of deposit, the AmFirst trust account balance was $1,196.72. No additional deposits were made into this account until August 5. On July 30 and 31, Malcom issued three checks totaling $34,031.94 out of his AmFirst trust account. Two of the checks were payable to Malcom and totaled $12,847. The other check was payable to the "Charles A. Barber Trust" in the amount of $21,184.94. On September 17, the AmFirst account balance was $942.50, even though no funds had been paid out of the account for the Wysses transaction. On December 17, Malcom issued four checks out of his AmFirst trust account to the sellers of the real estate purchased by the Wysses totaling $51,932.51. This count alleges that without deposits to the account unrelated to the Wysses transaction, there would have been insufficient funds to cover these checks.

Count IV: Malcom represented Audrey Jean Allen with regard to the sale of certain real estate to Larry and Shirley Brooks. Pursuant to a written installment sale agreement, the Brookses were to pay annual payments in the amount of $24,102.64 to Allen. On December 16, 1991, a deposit was made into Malcom's AmFirst trust account in the amount of $24,102.64, with the notation "Jean Allen - Larry Brooks" on the deposit slip. On December 19, Malcom's trust account balance was $23,384.08, even though no funds related to the "Jean Allen - Larry Brooks" transaction had been paid out of the account. On December 23, Malcom issued a check in the amount of $24,102.64 to Allen, with the note "Larry Brooks Contract" in the memo portion of the check.

Count V: On December 27, 1991, a deposit was made into the AmFirst trust account in the amount of $65,000, with the notation "Logan - Messinger Gateway" on the deposit slip. On December 31, the account balance was $54,053.44, and on January 2, 1992, the account balance was $244.64, even though no funds related to the "Logan - Messinger Gateway" transaction had been paid out of the account. On January 28, Malcom issued two checks out of the AmFirst account for the "Logan - Messinger Gateway" transaction. The two checks, one payable to McCook National in the amount of $28,212.50 and one to the Farmers Home Administration in the amount of $36,787.50, would not have been payable without deposits unrelated to the "Logan - Messinger Gateway" transaction.

Count VI: On January 30, 1992, Malcom deposited client funds in the amount of $65,000 into the AmFirst trust account, with the note "Barber Trust - FNB Trust" on the deposit slip. On January 31, the account balance was $119.70 even though no funds related to the "Barber Trust - FNB Trust" had been paid out of the account. From January 31, 1992, through January 1993, the account balance remained below the $65,000 which should have remained in the account.

Count VII: On January 7, 1992, a deposit in the amount of $46,000 was placed into Malcom's AmFirst trust account, with the note "Barber Seidner Farm" on the deposit slip. On January 9, the account balance was $37,836.93 even though no funds related to the "Barber Seidner Farm" had been paid out of the account. On January 13, Malcom issued a check out of the AmFirst trust account to McCook National in the amount of $46,000, with the note "Barber Est./Seidner rent" on the memo portion of the check.

Count VIII: On January 21, 1992, a deposit was made into the AmFirst trust account in the amount of $29,490.04, with the note "Barber Trust Templeton Fund" on the deposit slip. On January 22, the account balance was $244.64, even though no funds had been paid relating to the "Barber Trust Templeton Fund."

Count IX: On February 18, 1992, there was a deposit into Malcom's AmFirst trust account in the amount of $34,000, with the note "Wegener - Cappel Farm" on the deposit slip. On

March 31, the account balance was $180.85, even though no funds relating to the "Wegener - Cappel Farm" had been paid out of the account. On April 30, Malcom issued two checks out of his AmFirst trust account. One was issued to Gene and Charlene Wegener in the amount of $965.83, with the note "Cappel/Wegener" on the memo portion of the check. The second check was issued to Farmers Home Administration in the amount of $33,034.17, with the note "Wegener/Cappel" on the memo portion of the check.

Count X: On February 25, 1992, a deposit in the amount of $10,000 was made to Malcom's AmFirst trust account, with the notation "Palic - H. Koch" on the deposit slip. On March 31, the account balance was $180.85, even though no funds related to "Palic - H. Koch" had been paid out of the account. On April 6, Malcom issued a check payable to Jim Palic for $7,018.94 out of the AmFirst trust account, with the notation "Henry Koch real estate" on the memo portion of the check. On April 20, Malcom issued a check out of his AmFirst trust account to Henry Koch in the amount of $594.87. On May 1, Malcom issued a check out of his AmFirst trust account in the amount of $2,386.19 payable to the Red Willow County Treasurer, with the note "Palic - Koch RC."

The NSBA states that the acts in each of the several counts constitute violations of Malcom's oath of office as an attorney licensed to practice law in Nebraska as provided by Neb. Rev. Stat. § 7-104 (Reissue 1991). The NSBA alleges violations of the Code of Professional Responsibility, specifically DR 1-102 and DR 9-102.

Malcom's answer was filed on May 29, 1996, and an amended answer was filed on August 29. A motion for leave to amend formal charges was filed on September 4. On September 20, the referee entered an order permitting the amendments as set forth in the motion. Malcom subsequently filed an answer to amended formal charges on October 18.

A hearing was held before the referee on October 2, 1996. At issue was whether the evidence was sufficient to establish that the respondent violated the disciplinary rules with respect to misappropriating client trust funds, segregating client trust funds, and keeping adequate trust fund records. Malcom was

charged with 10 counts of attorney misconduct related to his handling of client funds.

The referee found that Malcom violated DR 9-102(A) and (B). With respect to count I, the referee found that Malcom had insufficient funds on deposit in the First National trust account to cover the trust deposit of the Masters estate. With respect to count II, the referee found that Malcom made use of the trust account for improper purposes and did not segregate client funds. With respect to counts III, IV, and V, the referee found that Malcom failed to preserve client trust funds. With respect to the remaining counts, the referee generally found a violation of DR 9-102(A) and (B) without particularity. The referee then recommended that Malcom be disbarred. Malcom filed exceptions to the referee's report on October 28, 1996.

The NSBA filed an application for temporary suspension of Malcom on December 19, 1996, until final disposition of the pending disciplinary proceedings. This court issued an order to show cause on December 27 and an order of temporary suspension on January 23, 1997.

Malcom takes exception to the referee's findings and recommendation, arguing that the evidence is insufficient to support a finding that he violated disciplinary rules and that the recommendation for disbarment is excessive and probation or suspension is reasonable. Malcom does not dispute the factual allegations in the charges.

## STANDARD OF REVIEW

A proceeding to discipline an attorney is a trial de novo on the record, in which the Nebraska Supreme Court reaches a conclusion independent of the findings of the referee; provided, however, that where the credible evidence is in conflict on a material issue of fact, the court considers and may give weight to the fact that the referee heard and observed the witnesses and accepted one version of the facts rather than another. *State ex rel. NSBA v. Johnston,* 251 Neb. 468, 558 N.W.2d 53 (1997); *State ex rel. NSBA v. Van,* 251 Neb. 196, 556 N.W.2d 39 (1996); *State ex rel. NSBA v. Johnson,* 249 Neb. 563, 544 N.W.2d 803 (1996); *State ex rel. NSBA v. Bruckner,* 249 Neb. 361, 543 N.W.2d 451 (1996); *State ex rel. NSBA v. Woodard,* 249 Neb. 40, 541 N.W.2d 53 (1995).

## ANALYSIS

Malcom is charged with violation of DR 1-102 and DR 9-102 of the Nebraska Code of Professional Responsibility. DR 1-102 is entitled "Misconduct" and provides as follows:

(A) A lawyer shall not:

(1) Violate a Disciplinary Rule.

. . . .

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

. . . .

(6) Engage in any other conduct that adversely reflects on his or her fitness to practice law.

DR 9-102 is entitled "Preserving Identity of Funds and Property of a Client" and provides in pertinent part:

(A) All funds of clients paid to a lawyer or law firm shall be deposited in one or more identifiable bank or savings and loan association accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

(1) Funds reasonably sufficient to pay account charges may be deposited therein.

(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

(B) A lawyer shall:

. . . .

(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to the client regarding them.

Malcom's first exception to the referee's findings and recommendation is in regard to the sufficiency of the evidence. Malcom argues that the conclusion that the account discrepancies were the result of misconduct on his part must be estab-

lished by clear and convincing evidence and that here the evidence is insufficient to establish that Malcom violated disciplinary rules. He states that in order for a misappropriation charge to make sense, the complainant must establish that the missing funds were actually converted by Malcom.

Misappropriation is defined as any unauthorized use of client funds, including not only stealing, but also any other unauthorized temporary use by the attorney for personal purposes, whether or not the attorney derives any personal gain or benefit therefrom. *State ex rel. NSBA v. Bruckner, supra.*

In order to sustain a complaint in a lawyer discipline proceeding, we must find the complaint to be established by clear and convincing evidence. See *State ex rel. NSBA v. Johnson, supra.* In the present case, Malcom acknowledges the deficiencies in the bookkeeping of the various trust accounts containing his clients' funds. Malcom does not deny the factual claims in each of the 10 counts; rather, he admits that there were not sufficient funds in his trust accounts to cover obligations to those clients whose funds he had previously deposited in the accounts. Malcom explains that the deficiencies in the account balances were inadvertent and that his inability to explain or reconstruct the financial transactions for his clients was due to the passage of time and the loss or unavailability of adequate records.

Those explanations are simply not sufficient to justify the account balances in Malcom's trust accounts after the deposit of client funds and without payment regarding those clients' accounts. From our de novo review, we find the evidence clearly and convincingly established that the manner in which Malcom handled the trust accounts violates DR 1-102 and DR 9-102.

Malcom also takes exception to the severity of the sanction of disbarment recommended by the referee, arguing that a sanction of probation or suspension would be reasonable.

To determine whether and to what extent discipline should be imposed in a lawyer discipline proceeding, the Supreme Court considers the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's pre-

sent or future fitness to continue in the practice of law. *State ex rel. NSBA v. Johnston*, 251 Neb. 468, 558 N.W.2d 53 (1997); *State ex rel. NSBA v. Van*, 251 Neb. 196, 556 N.W.2d 39 (1996); *State ex rel. NSBA v. Gregory*, 251 Neb. 41, 554 N.W.2d 422 (1996); *State ex rel. NSBA v. Ramacciotti*, 250 Neb. 893, 553 N.W.2d 467 (1996); *State ex rel. NSBA v. Johnson*, 249 Neb. 563, 544 N.W.2d 803 (1996); *State ex rel. NSBA v. Bruckner*, 249 Neb. 361, 543 N.W.2d 451 (1996); *State ex rel. NSBA v. Gleason*, 248 Neb. 1003, 540 N.W.2d 359 (1995).

Absent mitigating circumstances, the appropriate discipline in cases of misappropriation or commingling of client funds is disbarment. *State ex rel. NSBA v. Gridley*, 249 Neb. 804, 545 N.W.2d 737 (1996); *State ex rel. NSBA v. Bruckner, supra*; *State ex rel. NSBA v. Woodard*, 249 Neb. 40, 541 N.W.2d 53 (1995). Similarly, misappropriation caused by serious, inexcusable violation of a duty to oversee entrusted funds is deemed willful, even in the absence of improper intent or deliberate wrongdoing. *State ex rel. NSBA v. Bruckner, supra*. The fact that no client suffered any financial loss does not excuse the misappropriation of client funds and does not provide a reason for imposing a less severe sanction. *State ex rel. NSBA v. Gridley, supra*; *State ex rel. NSBA v. Bruckner, supra*; *State ex rel. NSBA v. Woodard, supra*.

Mitigating factors, however, will overcome the presumption of disbarment in misappropriation and commingling cases only if they are extraordinary and, when aggravating circumstances are present, substantially outweigh as well those aggravating circumstances. *State ex rel. NSBA v. Bruckner, supra*; *State ex rel. NSBA v. Woodard, supra*.

We have also held that a lawyer's poor accounting procedures and sloppy office management are not excuses or mitigating circumstances in reference to commingled funds. *State ex rel. NSBA v. Gridley*, supra. Similarly, the number of times these transactions occurred is an important factor in our consideration. Multiple acts of attorney misconduct are deserving of more serious sanctions and are distinguishable from isolated incidents. *State ex rel. NSBA v. Bruckner, supra*.

In the present case, we are unable to find mitigating circumstances which will overcome the presumption of disbarment.

The charges against Malcom include 10 counts of misconduct and encompass several years, indicating multiple acts of misconduct. Malcom has presented no circumstances which would allow a less severe sanction. We give no weight to Malcom's arguments claiming that the deficiencies were inadvertent and that he was unable to explain the financial transactions because of the passage of time and loss or unavailability of records.

When we balance the nature of Malcom's acts with the need to protect the public, the need to deter others, the reputation of the bar as a whole, and Malcom's privilege to practice law, we can only conclude, based on the nature and multiple occurrences of the misconduct, the only appropriate judgment is to disbar Malcom. Accordingly, we enter a judgment of disbarment.

JUDGMENT OF DISBARMENT.

WRIGHT, J., not participating.