## CONCLUSION

We reverse the district court's dismissal of McDougle's petition for review and remand the cause for further proceedings.

Reversed and remanded for
further proceedings.

———————————

State of Nebraska ex rel. Counsel for Discipline
of the Nebraska Supreme Court, relator, v.
Brenda J. Council, respondent.
___ N.W.2d ___

Filed September 12, 2014.    No. S-13-379.

1. **Disciplinary Proceedings.** A proceeding to discipline an attorney is a trial de novo on the record.
2. ____. The basic issues in a disciplinary proceeding against an attorney are whether the Nebraska Supreme Court should impose discipline and, if so, the appropriate discipline under the circumstances.
3. **Disciplinary Proceedings: Appeal and Error.** When no exceptions to the referee's findings of fact are filed, the Nebraska Supreme Court may consider the referee's findings final and conclusive.
4. **Disciplinary Proceedings.** To determine whether and to what extent discipline should be imposed in an attorney discipline proceeding, the Nebraska Supreme Court considers the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present or future fitness to continue in the practice of law.
5. ____. In determining the proper discipline of an attorney, the Nebraska Supreme Court considers the attorney's actions both underlying the events of the case and throughout the proceeding, as well as any aggravating or mitigating factors.
6. ____. Each attorney discipline case must be evaluated individually in light of its particular facts and circumstances. In addition, the propriety of a sanction must be considered with reference to the sanctions imposed in prior similar cases.
7. ____. Multiple acts of attorney misconduct are deserving of more serious sanctions and are distinguishable from isolated incidents.
8. **Disciplinary Proceedings: Presumptions.** In an attorney discipline case, mitigating factors may overcome the presumption of disbarment in misappropriation and commingling cases where such factors are extraordinary and substantially outweigh any aggravating circumstances. Absent such mitigating circumstances, the appropriate sanction is disbarment.

Original action. Judgment of disbarment.

John W. Steele, Assistant Counsel for Discipline, for relator.

Vince Powers, of Vince Powers & Associates, for respondent.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, and Cassel, JJ.

Per Curiam.

## I. NATURE OF CASE

The Counsel for Discipline of the Nebraska Supreme Court, relator, brought formal charges against Brenda J. Council, respondent, based on the conduct underlying her convictions for abuse of public records and wire fraud. A court-appointed referee found that respondent had violated her oath of office as an attorney and Neb. Ct. R. of Prof. Cond. § 3-508.4 (misconduct) and recommended that she be suspended from the practice of law for 1 year, followed by 2 years' probation. Relator takes exception to the recommended sanction as being too lenient. We find that because respondent's misconduct involved misappropriation, misrepresentation, the violation of Nebraska law, and abuse of public office, she should be disbarred.

## II. FACTS

In 1977, respondent was admitted to practice law in Nebraska. Between 1982 and 2005, she was elected or appointed to various public offices, including the Omaha Board of Education, the Omaha City Council, and the Commission of Industrial Relations. In 2005, respondent went into private practice in Omaha, Nebraska. She maintained this practice at all times relevant to these disciplinary proceedings.

Between 2009 and 2013, respondent served as a state senator for the 11th legislative district. After her initial election, her campaign committee, designated the "Committee to Elect Brenda Council" (campaign committee), remained in existence. The campaign committee had a separate bank account for which respondent held a debit card.

Between January 2010 and July 2012, respondent took out more than $63,000 in cash advances using the campaign

committee's debit card and spent those funds for gambling. She also made various deposits into the campaign committee's account in an attempt to "repay those campaign funds." Respondent did not report the withdrawals or the subsequent deposits on her campaign statements filed with the Nebraska Accountability and Disclosure Commission (NADC).

For failing to report the cash advances and deposits and for filing false reports with the NADC, respondent was charged with two counts of abuse of public records (Class II misdemeanor), pursuant to Neb. Rev. Stat. § 28-911(1)(d) (Reissue 2008). She pled guilty to these charges. The county court found her guilty and ordered her to pay a fine of $500.

In April 2013, relator brought formal charges against respondent. Relator alleged that respondent's conduct surrounding the misuse of campaign funds violated respondent's oath of office as an attorney and § 3-508.4 (misconduct). Respondent admitted to the charges, but she affirmatively alleged that she had repaid "the majority of the funds" and was "undergoing Counseling for her gambling addictions."

While the disciplinary proceedings were pending, respondent was charged in federal district court with wire fraud, a felony, under 18 U.S.C. § 1343 (2012) for her misuse of campaign funds. Pursuant to a plea agreement, she entered a plea of guilty and was sentenced to 3 years' probation, a $500 fine, and a $100 "felony assessment."

After learning of respondent's conviction for wire fraud, the Committee on Inquiry for the Second Disciplinary District requested that we temporarily suspend respondent from the practice of law in Nebraska pending resolution of the disciplinary proceedings. Respondent voluntarily consented to the entry of an order imposing a temporary suspension, which we entered on September 25, 2013.

Respondent consented to and relator filed additional formal charges that made reference to respondent's conviction for wire fraud. As before, relator alleged that respondent's conduct surrounding the misuse of campaign funds violated respondent's oath of office as an attorney and § 3-508.4 (misconduct). Respondent again admitted the allegations.

On December 18, 2013, a hearing was held before a court-appointed referee. Based on the evidence adduced at the hearing, the referee found that respondent had violated her oath of office as an attorney and § 3-508.4 (misconduct). The referee recommended that respondent be suspended for 1 year, with credit for the length of her temporary suspension. He also recommended that following the period of suspension, respondent should complete 2 years' probation, the terms of which would include yearly audits of her trust account.

The referee explicitly considered and dismissed disbarment as an appropriate sanction for respondent's violations, because (1) her acts of misconduct "have had no impact upon the Respondent's service to the legal profession," (2) she had no prior violations, (3) her actions following the misconduct "mitigate[d] the seriousness of the misconduct," (4) "[s]ociety is addressing the moral grounds of the misconduct," and (5) she is fit to continue practicing law. The referee opined that "we all lose if our sanction prevents the Respondent from serving her clients in her community as an attorney."

## III. STANDARD OF REVIEW

[1] A proceeding to discipline an attorney is a trial de novo on the record.[1]

## IV. EXCEPTIONS

Neither party takes exception to the referee's factual findings. However, relator takes exception to the referee's recommended sanction.

## V. ANALYSIS

[2] The basic issues in a disciplinary proceeding against an attorney are whether we should impose discipline and, if so, the appropriate discipline under the circumstances.[2] We address each issue in turn.

---

[1] *State ex rel. Counsel for Dis. v. Cording*, 285 Neb. 146, 825 N.W.2d 792 (2013).

[2] *State ex rel. Counsel for Dis. v. Palik*, 284 Neb. 353, 820 N.W.2d 862 (2012).

### 1. Grounds for Discipline

[3] The referee determined that respondent had violated her oath of office as an attorney and § 3-508.4 (misconduct). As noted previously, neither party took exception to that finding or any other factual finding in the referee's report. When no exceptions to the referee's findings of fact are filed, we may consider the referee's findings final and conclusive.[3] We do so in the instant case.

Based upon the undisputed findings of fact in the referee's report, we conclude that the formal charges and the additional formal charges against respondent are supported by clear and convincing evidence. We specifically conclude that by her conduct, respondent violated her oath of office as an attorney and § 3-508.4 (misconduct). We limit the remainder of our discussion to the appropriate discipline.

### 2. Appropriate Discipline

The referee recommended that respondent be suspended from the practice of law in Nebraska for 1 year, with credit for the length of her temporary suspension, and that following the period of suspension, respondent should complete 2 years' probation. Respondent argues that relator waived any objection to this recommendation, because at the hearing before the referee, relator did not object to respondent's arguments for a 1-year suspension. We do not agree that relator waived the right to object.

Relator did not waive the right to object to the referee's recommendation, because relator did not have the opportunity to object to that recommendation at the hearing. At the time of the hearing, the referee had not made a recommendation as to what sanction respondent should receive. Relator could not, by his failure to object to *respondent's* arguments for a 1-year suspension, waive the right to take exception to the referee's recommendation, which at that time, had not yet been made. And we point out that this court is not required to accept the recommendations of the referee as to the discipline to be

---

[3] *Cording, supra* note 1.

imposed.[4] Our consideration of the discipline to be imposed is de novo.[5]

Having settled this preliminary matter regarding relator's exception, we now proceed to determine the appropriate sanction for respondent's misconduct. Under Neb. Ct. R. § 3-304(A), we may impose one or more of the following disciplinary sanctions: "(1) Disbarment by the Court; or (2) Suspension by the Court; or (3) Probation by the Court in lieu of or subsequent to suspension, on such terms as the Court may designate; or (4) Censure and reprimand by the Court; or (5) Temporary suspension by the Court."

[4,5] To determine whether and to what extent discipline should be imposed in an attorney discipline proceeding, we consider the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present or future fitness to continue in the practice of law.[6] In determining the proper discipline of an attorney, we consider the attorney's actions "both underlying the events of the case and throughout the proceeding," as well as any aggravating or mitigating factors.[7]

[6] Each attorney discipline case must be evaluated individually in light of its particular facts and circumstances.[8] In addition, the propriety of a sanction must be considered with reference to the sanctions imposed in prior similar cases.[9]

## (a) Respondent's Conduct

Respondent's actions are not disputed. Over the course of approximately 2½ years, she intentionally and repeatedly

---

[4] See *State ex rel. Counsel for Dis. v. Switzer*, 275 Neb. 881, 750 N.W.2d 681 (2008).

[5] See *id*.

[6] *Palik, supra* note 2.

[7] See *id*. at 359, 820 N.W.2d at 867.

[8] *State ex rel. Counsel for Dis. v. Beltzer*, 284 Neb. 28, 815 N.W.2d 862 (2012).

[9] *Id*.

used the debit card linked to her campaign committee's bank account to take out cash advances for the purpose of gambling. After using the funds to gamble, she would "replace" the money that she had withdrawn by depositing money back into the campaign committee's bank account. Respondent did not report the withdrawals or the subsequent deposits to her campaign treasurer or the NADC. These are criminal actions, for which respondent was prosecuted in both state court and federal court.

Three particular aspects of respondent's actions are troublesome: (1) She misappropriated funds that others had entrusted to her for a specific purpose; (2) to conceal her actions, she engaged in misrepresentation and violated Nebraska law; and (3) her misconduct was intentional and recurring.

### (i) Misappropriation and Conversion of Funds

Respondent's unauthorized use of campaign funds for her own purpose constituted misappropriation and conversion. For purposes of attorney discipline proceedings, "misappropriation" is defined as "any unauthorized use" of funds "entrusted to an attorney, including not only stealing, but also unauthorized temporary use for the attorney's own purpose, whether or not the attorney derives any personal gain or benefit therefrom."[10] It is a "serious offense involving moral turpitude" and "'violates basic notions of honesty and endangers public confidence in the legal profession.'"[11] "[C]onversion" is the "misappropriation" of another's property "to the attorney's own use *or some other improper use*."[12]

Respondent withdrew more than $63,000 from the campaign committee's bank account for an unauthorized and improper use—gambling. The funds which respondent withdrew for gambling were legally held by her campaign committee and

---

[10] See *State ex rel. Counsel for Dis. v. Carter*, 282 Neb. 596, 606, 808 N.W.2d 342, 351 (2011).

[11] See *State ex rel. NSBA v. Veith*, 238 Neb. 239, 247, 470 N.W.2d 549, 555 (1991).

[12] See *id.* at 245, 470 N.W.2d at 554 (emphasis in original).

had been contributed to the committee for the explicit purpose of supporting her candidacy. The evidence shows that respondent withdrew and used those funds with the knowledge that she was using "campaign funds" for a purpose other than that for which they were intended. This constituted misappropriation and conversion.

Respondent's later repayment of the campaign funds does not excuse her misappropriation and conversion of those funds. "A restitution of funds wrongfully converted by a lawyer, after he [or she] is faced with legal accountability, is not an exoneration of his [or her] professional misconduct."[13] And the fact that the campaign committee ultimately did not suffer a financial loss is not a "reason for imposing a less severe sanction."[14] We cannot overlook respondent's misappropriation and conversion of campaign funds simply because she later repaid those funds.

Respondent emphasizes that "the money that was gambled was not clients' money but rather campaign contributions."[15] But we do not see the significance of this fact. In the case of both campaign contributions and client trust funds, individuals entrust their money to another for a specific, mutually understood purpose. In either case, using the funds for other than the specified purpose is a misuse and misappropriation of those funds. Given these similarities, we see no meaningful distinction between respondent's misappropriation of campaign funds and the misappropriation of client trust funds. Indeed, we have previously rejected the distinction between client and nonclient funds in cases of misappropriation.[16]

Neither is it significant that respondent's misconduct occurred outside of her representation of clients. "[A] lawyer

---

[13] *State ex rel. Nebraska State Bar Assn. v. Bremers*, 200 Neb. 481, 484, 264 N.W.2d 194, 197 (1978).

[14] See *Carter, supra* note 10, 282 Neb. at 607, 808 N.W.2d at 351.

[15] Brief for respondent at 24.

[16] See, *State ex rel. Counsel for Dis. v. Bouda*, 282 Neb. 902, 806 N.W.2d 879 (2011); *State ex rel. NSBA v. Rosno*, 245 Neb. 365, 513 N.W.2d 302 (1994); *State ex rel. Nebraska State Bar Assn. v. McConnell*, 210 Neb. 98, 313 N.W.2d 241 (1981).

is bound by the [rules governing the legal profession] in every capacity in which the lawyer acts, whether he [or she] is acting as an attorney or not."[17]

### (ii) Misrepresentation and
### Violation of State Law

Respondent actively concealed her misappropriation and conversion of campaign funds. Under Neb. Rev. Stat. § 49-1455(1)(b) (Reissue 2010), the campaign statement of a committee must disclose "the total amount of expenditures made during the period covered by the campaign statement." In repeated violation of this statute, when preparing and filing campaign statements, respondent did not report her personal use of funds from the campaign committee's bank account.

Respondent testified that she knew it was "wrong" not to report the expenditures for gambling but that she feared compliance with the reporting requirements "would reveal . . . that [she] was gambling." Because of this fear, respondent deliberately remained silent as to the cash advances, despite her legal duty to disclose all campaign expenditures.[18] Under such circumstances, her silence was equivalent to false representation.[19] "'[A] partial and fragmentary disclosure, accompanied with the wil[l]ful concealment of material and qualifying facts, is not a true statement, and is as much a fraud as an actual misrepresentation, which, in effect, it is.'"[20]

In addition to being fraudulent in their omissions, the campaign reports filed by respondent also contained affirmative misrepresentations. Respondent admitted that when she filed the campaign reports with the NADC, she knew they "didn't reflect deposits and withdrawals that were made." Nonetheless, when she submitted the campaign reports, she gave her assurance that, to the best of her knowledge, the information represented therein was true. By doing so, respondent deliberately

---

[17] *State ex rel. Nebraska State Bar Assn. v. Michaelis*, 210 Neb. 545, 560, 316 N.W.2d 46, 54 (1982).

[18] See § 49-1455(1)(b).

[19] See *State ex rel. NSBA v. Douglas*, 227 Neb. 1, 416 N.W.2d 515 (1987).

[20] *Id.* at 25, 416 N.W.2d at 530.

misrepresented that she had no knowledge of unreported expenditures when she actually did and, effectively, engaged in fraud. "'[O]ne who responds to an inquiry is guilty of fraud if he [or she] denies all knowledge of a fact which he [or she] knows to exist.'"[21]

### (iii) Intentional and Recurring Conduct

The evidence shows that respondent's misconduct was intentional and recurring. By respondent's own admission, her use of the debit card linked to her campaign committee's bank account was intentional and part of a routine. Indeed, she used the debit card to obtain cash advances for gambling over 100 times. She testified that she intended "to use campaign funds" when she made the cash advances and that she knew the money should not have been used for gambling.

As for respondent's misrepresentations to the NADC, she testified that she made a conscious decision not to disclose the cash advances. She filed three separate reports with the NADC, none of which disclosed her withdrawal of campaign funds or the subsequent deposits.

### (iv) Conclusion as to Respondent's Conduct

Respondent's misconduct was intentional and repeated and occurred over the course of 2½ years. She misappropriated and converted funds entrusted to her by others for a specific purpose and then attempted to conceal her actions through misrepresentation and in violation of Nebraska law.

### (b) Aggravating and Mitigating Circumstances

### (i) Aggravators

The fact that respondent engaged in the aforementioned misconduct while holding elected public office greatly aggravates her misconduct. Like any public officer, respondent was

---

[21] *Id*. at 26, 416 N.W.2d at 531.

a "'fiduciary toward the public.'"[22] She was "charged with a public trust."[23] And as a lawyer holding public office, she "assume[d] legal responsibilities going beyond those of other citizens."[24] By misappropriating the funds entrusted to her as a public officer and covering up that misappropriation with misrepresentations, respondent violated the public trust and abused her office. Such abuse of public office by an attorney "can suggest an inability to fulfill the professional role of lawyers."[25]

Respondent's active concealment of her misappropriation of campaign funds is an additional aggravating factor.[26] One of the "essential eligibility requirements for admission to the practice of law in Nebraska" is "'[t]he ability to conduct oneself with a high degree of honesty, integrity, and trustworthiness in all professional relationships and with respect to all legal obligations.'"[27] As such, this court "does not look kindly upon acts which call into question an attorney's honesty and trustworthiness."[28]

[7] The number of individual acts of misconduct committed by respondent aggravates her behavior. Multiple acts of attorney misconduct are deserving of more serious sanctions and are distinguishable from isolated incidents.[29] Respondent used the debit card linked to her campaign committee's bank account over 100 times to obtain funds for gambling. Each of these withdrawals was a distinct misappropriation and conversion of campaign funds. Respondent also filed three separate campaign reports with the NADC, each of which was an act of misrepresentation.

---

[22] See *id*.

[23] See *id*. at 27, 416 N.W.2d at 531.

[24] See § 3-508.4, comment 5.

[25] See *id*.

[26] See *Carter, supra* note 10.

[27] *State ex rel. Counsel for Dis. v. Crawford*, 285 Neb. 321, 367, 827 N.W.2d 214, 246 (2013) (alteration in original).

[28] See *id*.

[29] *State ex rel. NSBA v. Malcom*, 252 Neb. 263, 561 N.W.2d 237 (1997).

*(ii) Mitigators*

Respondent admitted to her misconduct and took responsibility for her actions. She pleaded guilty to the criminal charges in both state court and federal court, and admitted the allegations in the formal charges and additional formal charges. She was cooperative throughout these proceedings and demonstrated remorse. All of these are relevant mitigating factors.[30]

Respondent has an extensive history of political, community, and volunteer service. At the referee hearing, several individuals attested to respondent's service to the community, including a member of the Public Service Commission, a former mayor of Omaha, a former president of the Omaha School Board, and the executive director of the Peter Kiewit Foundation. Respondent characterized her legal practice as providing legal services in an area where "[t]here are not a lot of others doing it." She testified that she wants to "continue to be of service, particularly to the residents of North Omaha." "Continuing commitment to the legal profession and the community" is a mitigating factor in an attorney discipline case.[31]

The fact that respondent is actively seeking help for her gambling addiction is a mitigating factor.[32] Respondent testified that through continued participation in Gamblers Anonymous, she was "confident" that she would "refrain from gambling" in the future.

(c) Sanctions Imposed
in Similar Cases

This court has frequently imposed the sanction of disbarment "in cases of embezzlement or like defalcation by lawyers, and that sanction has not depended upon whether the funds

---

[30] See, *State ex rel. Counsel for Dis. v. Pierson*, 281 Neb. 673, 798 N.W.2d 580 (2011); *State ex rel. Counsel for Dis. v. Petersen*, 271 Neb. 262, 710 N.W.2d 646 (2006).

[31] See *State ex rel. Counsel for Dis. v. Swan*, 277 Neb. 728, 737, 764 N.W.2d 641, 647 (2009).

[32] See *State ex rel. Counsel for Dis. v. Downey*, 276 Neb. 749, 757 N.W.2d 381 (2008).

taken were those of a client."[33] We have disbarred numerous attorneys for the misappropriation and conversion of client funds as well as nonclient funds.[34]

[8] However, we have not "adopted a 'bright line rule' that misappropriation of funds will always result in disbarment."[35] Mitigating factors may "overcome the presumption of disbarment in misappropriation and commingling cases" where they are "extraordinary" and "substantially outweigh" any aggravating circumstances.[36] Absent such mitigating circumstances, the appropriate sanction is disbarment.[37]

Of the cases in which misappropriation and conversion did not result in disbarment, a majority of those were from the 1980's.[38] In 1991, however, we recognized and moved away from a "trend in recent years toward lighter sanctions" for misappropriation.[39]

Since 1991, we have ordered disbarment in all cases involving the misappropriation of client funds except two.[40] In *State*

---

[33] See *McConnell, supra* note 16, 210 Neb. at 100, 313 N.W.2d at 242.

[34] See, *Bouda, supra* note 16 (funds of employer); *Carter, supra* note 10 (client funds); *State ex rel. Counsel for Dis. v. Reilly*, 271 Neb. 465, 712 N.W.2d 278 (2006) (client funds); *Malcom, supra* note 29 (client funds); *Rosno, supra* note 16 (funds of association for which attorney was treasurer); *State ex rel. NSBA v. Radosevich*, 243 Neb. 625, 501 N.W.2d 308 (1993) (client funds); *Veith, supra* note 11 (client funds); *McConnell, supra* note 16 (local bar association funds); *Bremers, supra* note 13 (client funds); *State ex rel. Nebraska State Bar Assn. v. Ledwith*, 197 Neb. 572, 250 N.W.2d 230 (1977) (funds of estate held by attorney as executor).

[35] See *State ex rel. Counsel for Dis. v. Achola*, 266 Neb. 808, 816, 669 N.W.2d 649, 656 (2003).

[36] See *Malcom, supra* note 29, 252 Neb. at 272, 561 N.W.2d at 243.

[37] See *id.*

[38] See, *State ex rel. NSBA v. Fitzgerald*, 227 Neb. 90, 416 N.W.2d 28 (1987); *State ex rel. NSBA v. Miller*, 225 Neb. 261, 404 N.W.2d 40 (1987); *State ex rel. NSBA v. Tomek*, 214 Neb. 220, 333 N.W.2d 409 (1983).

[39] See *Veith, supra* note 11, 238 Neb. at 251, 470 N.W.2d at 558.

[40] See, *Beltzer, supra* note 8 (suspension); *Carter, supra* note 10 (disbarment); *Reilly, supra* note 34 (disbarment); *Malcom, supra* note 29 (disbarment); *State ex rel. NSBA v. Gleason*, 248 Neb. 1003, 540 N.W.2d 359 (1995) (suspension); *Radosevich, supra* note 34 (disbarment); *Veith, supra* note 11 (disbarment).

*ex rel. NSBA v. Gleason*,[41] an attorney misappropriated an unspecified amount of client funds for his personal use. We concluded that an indefinite suspension was appropriate, because the attorney suffered from "dual psychological illnesses" and had self-reported his misappropriations to the relator.[42] In *State ex rel. Counsel for Dis. v. Beltzer*,[43] we ordered a 1-year suspension where the attorney's misappropriation of client trust funds involved no concealment and was an isolated event, he had no disciplinary record, and the record included multiple letters of support.

The instant case is distinguishable from both of these cases in which we ordered suspension for the misappropriation of client funds. Neither *Gleason*[44] nor *Beltzer*[45] involved the abuse of public office. Respondent did not self-report, as in *Gleason*. And, far from being an isolated event as in *Beltzer*, respondent's misconduct spanned 2½ years and involved numerous, distinct acts of misappropriation. Respondent also engaged in misrepresentation to conceal her misconduct, unlike the attorney in *Beltzer*.

Respondent's misconduct involved the filing of false campaign reports with the NADC so as to avoid disclosing her misappropriation of campaign funds. In prior discipline cases, comparable actions have been considered only in combination with other acts of misconduct.[46]

In *State ex rel. Counsel for Dis. v. Wintroub*,[47] we disbarred an attorney for evading government reporting requirements and committing ethical violations related to the representation of clients. In particular, he (1) was involved in "illegally structuring transactions to avoid federal bank reporting laws,"

---

[41] *Gleason, supra* note 40.

[42] See *id.* at 1008, 540 N.W.2d at 363.

[43] *Beltzer, supra* note 8.

[44] *Gleason, supra* note 40.

[45] *Beltzer, supra* note 8.

[46] See, *State ex rel. Counsel for Dis. v. Wintroub*, 277 Neb. 787, 765 N.W.2d 482 (2009); *Douglas, supra* note 19.

[47] *Wintroub, supra* note 46.

for which he had been convicted of a federal felony; (2) failed to diligently represent a client; (3) mishandled client trust funds; (4) accepted fees from a client during suspension; and (5) acted as a collection agent during suspension.[48] In ordering disbarment, we explained that the attorney had an "obligation to uphold the laws of the United States" and that his felony conviction thus "violate[d] basic notions of honesty and endanger[ed] public confidence in the legal profession."[49] We also stated that his other acts of misconduct demonstrated a "continued indifference to the rule of law" and a "consistent pattern of ethical violations."[50]

In *State ex rel. NSBA v. Douglas*,[51] we suspended a former attorney general for 4 years for multiple acts of misconduct, including the filing of a false statement of financial interest with the NADC. The other acts of misconduct included (1) engaging in business activities involving deceit and misrepresentation, (2) failing to fully disclose his compensation from those business activities to a special assistant attorney general, (3) failing to disclose conflicts of interest arising from those business activities, and (4) failing to disqualify himself from investigations in which he had a conflict of interest.[52]

The instant case is more comparable to *Wintroub*[53] than to *Douglas*.[54] Although both *Wintroub* and *Douglas* involved the failure to comply with reporting requirements, only *Wintroub* also involved the misuse of client funds.

### (d) Conclusion as to Discipline

Respondent engaged in the intentional and repeated misappropriation of campaign funds for her personal use and then employed deception and misrepresentation to conceal her

---

[48] See *id*. at 788, 765 N.W.2d at 485.

[49] *Id*. at 804, 765 N.W.2d at 495.

[50] *Id*.

[51] *Douglas, supra* note 19.

[52] See *id*.

[53] *Wintroub, supra* note 46.

[54] *Douglas, supra* note 19.

misconduct. On three separate campaign reports, she failed to report her personal use of funds from the campaign committee's bank account, in violation of § 49-1455(1)(b). She prepared and filed reports which were fraudulent in their omission and affirmatively misrepresented that, to the best of her knowledge, the information represented in the reports was true. For these actions, respondent was convicted of two misdemeanors and a federal felony.

The referee determined that "Respondent's remorse and acknowledging her responsibility and attacking her addiction substantially mitigate[d] the seriousness of the misconduct." He also placed great emphasis on respondent's repayment of the campaign funds and "her commitment to service, her passion and her dedication to address the most difficult issues which face our country today." Consequently, the referee recommended a 1-year suspension instead of disbarment.

But mitigating factors can "overcome the presumption of disbarment" in cases involving misappropriation only when they are "extraordinary" and also "substantially outweigh" the aggravating circumstances.[55] After considering all the circumstances of respondent's misconduct, we cannot conclude that there are mitigating circumstances which would overcome the presumption of disbarment for misappropriation. Respondent's repayment of the campaign funds, commitment to Gamblers Anonymous, and service to the community are commendable. Nonetheless, those facts do not "substantially outweigh" the aggravating factors—that she engaged in multiple acts of misappropriation, not merely one, and did so while holding elective public office.

Given the nature of respondent's actions, which involved misappropriation, misrepresentation, violation of state law, and abuse of public office, disbarment is the appropriate sanction. A 1-year suspension would not adequately reflect the severity of respondent's misconduct, deter others from engaging in similar conduct, or reinforce the high standards[56] to which attorneys and public officers are held.

---

[55]  See *Malcom, supra* note 29, 252 Neb. at 272, 561 N.W.2d at 243.

[56]  See, § 3-508.4, comment 5; *Douglas, supra* note 19.

## VI. CONCLUSION

It is the judgment of this court that respondent be disbarred from the practice of law in the State of Nebraska, effective from the date of her temporary suspension on September 25, 2013. Respondent shall comply with Neb. Ct. R. § 3-316 (rev. 2014), and upon failure to do so, she shall be subject to punishment for contempt of this court. Respondent is directed to pay costs and expenses in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 2012) and Neb. Ct. R. §§ 3-310(P) (rev. 2014) and 3-323 within 60 days after an order imposing costs and expenses, if any, is entered by this court.

JUDGMENT OF DISBARMENT.

MILLER-LERMAN, J., not participating.