Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/15/2020 08:09 AM CDT

- 79 -

**Nebraska Supreme Court Advance Sheets
305 Nebraska Reports**
STATE EX REL. COUNSEL FOR DIS. v. BARFIELD
Cite as 305 Neb. 79

**State of Nebraska ex rel. Counsel for Discipline
of the Nebraska Supreme Court, relator,
v. Jackie L. Barfield, respondent.**

___ N.W.2d ___

Filed February 21, 2020.    No. S-19-204.

1. **Disciplinary Proceedings.** When no exceptions to the referee's findings of fact are filed by either party in a disciplinary proceeding, the Nebraska Supreme Court may, at its discretion, adopt the findings of the referee as final and conclusive.

2. ____. Because attorney discipline cases are original proceedings before the Nebraska Supreme Court, the court reviews a referee's recommendations de novo on the record, reaching a conclusion independent of the referee's findings.

3. ____. Attorneys licensed to practice law in the State of Nebraska agree to operate under the supervision of the office of the Counsel for Discipline.

4. ____. A license to practice law confers no vested right, but is a conditional privilege, revocable for cause.

5. ____. Violation of any of the ethical standards relating to the practice of law or any conduct of an attorney in his or her professional capacity which tends to bring reproach on the courts or the legal profession constitutes grounds for suspension or disbarment.

6. ____. The goal of attorney discipline proceedings is not as much punishment as a determination of whether it is in the public interest to allow an attorney to keep practicing law.

7. ____. Providing for the protection of the public requires the imposition of an adequate sanction to maintain public confidence in the bar.

8. ____. To determine whether and to what extent discipline should be imposed in an attorney discipline proceeding, the Nebraska Supreme Court considers the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the

- 80 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
305 NEBRASKA REPORTS
STATE EX REL. COUNSEL FOR DIS. v. BARFIELD
Cite as 305 Neb. 79

respondent generally, and (6) the respondent's present or future fitness to continue in the practice of law.

9. ____. Each attorney discipline case must be evaluated in light of its particular facts and circumstances.

10. ____. For purposes of determining the proper discipline of an attorney, the Nebraska Supreme Court considers the attorney's actions both underlying the events of the case and throughout the proceeding, as well as any aggravating or mitigating factors.

11. ____. In attorney discipline cases, the propriety of a sanction must be considered with reference to the sanctions imposed in prior similar cases.

12. ____. Neither good faith nor ignorance of the rules prohibiting commingling client and personal funds provides a defense to a disciplinary charge that an attorney violated the rules against commingling.

13. ____. The Nebraska Supreme Court considers commingling of client funds with an attorney's own funds to be a matter of gravest concern in reviewing claims of lawyer misconduct.

14. ____. Even when the client suffers no loss, an attorney's commingling of client funds with personal funds is not a trivial or technical rule violation.

15. ____. Because it is such a dangerous and unfortunately common basis for disciplinary action, there is a continuing need to send a clear and strong message deterring attorneys from commingling client and personal funds and from using client trust accounts as personal checking accounts.

16. **Disciplinary Proceedings: Evidence.** In an attorney discipline case, the burden is on the respondent to provide evidence to be considered for mitigation of the formal charges.

17. **Disciplinary Proceedings.** Continuing commitment to the legal profession and the community is a mitigating factor in an attorney discipline case.

18. ____. Having no prior complaints is a mitigating factor in an attorney discipline case.

19. ____. An attorney's poor accounting practices are neither an excuse nor a mitigating circumstance in reference to commingled or misappropriated funds.

20. ____. Because cumulative acts of attorney misconduct are distinguishable from isolated incidents, they justify more serious sanctions.

21. **Disciplinary Proceedings: Presumptions.** Mitigating factors may overcome the presumption of disbarment in misappropriation and commingling cases only where they are extraordinary and, when aggravating circumstances are present, they substantially outweigh those aggravating circumstances.

Original action. Judgment of disbarment.

Julie L. Agena, Assistant Counsel for Discipline, for relator.

James Walter Crampton for respondent.

Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Per Curiam.

## NATURE OF CASE

The respondent appeals from the report and recommendation of the referee in an attorney disciplinary action. The referee recommended disbarment for violations of Neb. Ct. R. of Prof. Cond. §§ 3-501.15 (safekeeping property) and 3-508.4 (rev. 2016) (misconduct) relating to the attorney's commingling of earned and unearned client payments and cash withdrawals and checks written from her attorney trust account to pay for business and personal expenses. The trust account also suffered several overdrafts. The respondent argues that suspension rather than disbarment is the appropriate discipline for her actions.

## BACKGROUND

Jackie L. Barfield was admitted to the practice of law in the State of Nebraska in 1993, and at all times relevant was engaged in the practice of law in Omaha, Nebraska. Formal charges against her were filed by the office of the Counsel for Discipline of the Nebraska Supreme Court in February 2019.

The charges alleged that between October 2017 and April 2018, Barfield had written multiple personal checks and had made multiple cash withdrawals out of her attorney trust account. She had also paid insufficient-fund fees several times. Barfield admitted to writing personal checks and taking cash withdrawals from her attorney trust account, as well as having insufficient funds in that account, since at least 2013. Barfield was charged with violating §§ 3-501.15 (safekeeping property) and 3-508.4 (misconduct). Barfield, in her answer, admitted to the allegations.

- 82 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
305 NEBRASKA REPORTS
STATE EX REL. COUNSEL FOR DIS. v. BARFIELD
Cite as 305 Neb. 79

In mitigation, Barfield pled that (1) any economic harm any person may have suffered from her acts was "of very brief duration," (2) she has been providing services to economically disadvantaged members of the public at lower-than-normal fees throughout her career, (3) she is a minister and religious leader providing "comfort and moral guidance to her small group of followers generally beneficial to the social moral fabric of her community," and (4) she has no prior serious disciplinary complaints except one related to an unpaid bill from a doctor, for which she was privately reprimanded approximately 20 years before. Pursuant to Barfield's motion, judgment on the pleadings was granted as to the facts, under Neb. Ct. R. § 3-310(L) (rev. 2014).

Neither party filed written exceptions to the referee's report that was issued after a hearing to determine the nature and extent of the discipline to be imposed, considering any aggravating and mitigating factors. The report set forth that Barfield had been without a business account for approximately 5 years and, since at least 2013, has been withdrawing cash and writing checks on her attorney trust account to pay for personal and business expenses. Barfield has paid insufficient fund charges since 2013 for at least 23 overdrafts on her attorney trust account.

The record reflects that previously, in May 2000, the Nebraska State Bar Association had privately reprimanded Barfield for failing to deposit into her trust account a check issued to honor a medical lien in relation to her client's settlement and for failing to promptly disburse a portion of the settlement funds designated for medical providers. The Counsel for Discipline had found in the private reprimand that Barfield violated provisions of the Code of Professional Responsibility concerning general misconduct, neglect, and preservation of the identity of client funds.[1]

---

[1] Canon 1, DR 1-102(A)(1); Canon 6, DR 6-101(A)(3); and Canon 9, DR 9-102(A)(1)(2) and (B)(4), of the Code of Professional Responsibility.

- 83 -

Nebraska Supreme Court Advance Sheets
305 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. BARFIELD
Cite as 305 Neb. 79

### Barfield's Testimony

Barfield testified at the disciplinary hearing. Barfield was not permitted to offer any other evidence concerning mitigation, due to her failure to comply with discovery deadlines.

Barfield explained that her business account had been closed approximately 5 years prior due to lack of funds. Rather than opening another business account, she used her trust account to pay business expenses. She did not open another business account until recently.

Barfield testified that for the past 5 years she had worked part time as a sole practitioner out of her daughter's home. She explained: "Well, the business expenses are home-related. And I practice out of Bellevue, which is my daughter's home, and so it's been difficult, and that's one of the reasons that I put things related to Barfield Law, I just put it in the trust account." She testified that she has had no support staff since she stopped practicing out of a stand-alone building approximately 5 years before the hearing.

Barfield testified that her retainers were generally small and had been earned sometimes even before they were deposited into the trust account. No client had ever complained about how their funds were handled. When asked whether her commingling and withdrawals had harmed her clients, she said:

> Well, in reading some of the case law and — in my mind I didn't think it was, but in reading the case law, I understand since this case has started that even, you know, if you use it there's a possibility and so, yes, under those circumstances I do agree.

As for the overdrafts, Barfield explained that at least one of the overdrafts was due to a client's check bouncing—after she had withdrawn the deposit by making a check out to herself.

Barfield noted that since 2014, she has had several health concerns related to her knees and hips. She had been trying to wind up her practice in Nebraska in order to live permanently in Texas, where the weather was better for her health. But the winding up was taking longer than she thought, and she was

- 84 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
305 NEBRASKA REPORTS
STATE EX REL. COUNSEL FOR DIS. v. BARFIELD
Cite as 305 Neb. 79

traveling back and forth between a daughter's home in Texas and another daughter's home in Nebraska. The traveling had put an emotional strain on her, and she suffered from anxiety and migraines. In fact, she had suffered from "anxiety and everything" since she started practicing. Barfield testified that she had taken antidepressants "over the years" and had been prescribed medication for her anxiety.

With regard to the private reprimand approximately 20 years before, Barfield explained that the settlement payment to her client had been stopped due to an ongoing criminal matter in which the FBI was involved. This stop payment, in conjunction with her private practice being otherwise wound down after she accepted a position at a university, "threw my whole account off" and made it difficult for the doctor in question to contact her. Barfield left her job at the university after approximately 1 year of employment there and, in 2000, after taking another year to focus on her family and mental health, returned to private practice.

Barfield asked for any sanction short of disbarment. She stated that she now understood that she could not manage going back and forth between Texas and Nebraska anymore and would stay in Nebraska if allowed to continue to practice, stating:

> [M]y intention is if I'm going to practice in Nebraska, I have to live in Nebraska. And the going back and forth is just too stressful. It's causing me a lot of anxiety and it puts you in the position of having to do more than you can handle.

Barfield testified that she served lower-income clients with the intention of giving back to her community. She explained, "I believe I focus so much probably on trying to do the best work for my clients, and I might have been hyper focused on that than what was going on in my life." Barfield testified that she never wished to harm her clients and believed she could properly manage a trust account in the future.

- 85 -

Nebraska Supreme Court Advance Sheets
305 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. BARFIELD
Cite as 305 Neb. 79

Referee's Recommendation

The referee in his report noted that misuse of client trust accounts, even without obvious misappropriation, harms the reputation of the bar and that an appropriate sanction should be imposed that will deter others from such conduct. Barfield's conduct, the referee found, had tarnished the reputation of the bar.

The referee found that the duration and repetitive nature of Barfield's violations reflected negatively on Barfield's future fitness to practice law. Also, the referee considered Barfield's conduct to constitute both commingling and misappropriation that caused harm to her clients, reasoning:

[Barfield] admittedly left earned fees in her trust account without a clear accounting and separation until it was impossible to determine what money belonged to her and what belonged to her clients, thus commingling her money with client money. Additionally, [Barfield's] bank records show numerous overdrafts in her attorney trust account, which is clearly the misappropriation of client funds.

After considering sanctions imposed in similar cases, the referee concluded that the nature of Barfield's offenses "is of the gravest concern to the legal profession and the Court has consistently found these violations require disbarment, absent mitigation."

The referee found that Barfield had been cooperative throughout the investigation and disciplinary proceedings, which the referee considered a mitigating factor. The referee agreed with Barfield's counsel that Barfield's actions of readily admitting misconduct, acknowledging responsibility for her actions, and acknowledging that her violations have harmed the public reflected positively upon Barfield's attitude and character.

On the other hand, the referee stated that it appeared that Barfield failed to grasp the seriousness of her violations. The referee noted that Barfield had expressed that any economic

- 86 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
305 NEBRASKA REPORTS
STATE EX REL. COUNSEL FOR DIS. v. BARFIELD
Cite as 305 Neb. 79

harm was only of very brief duration. The referee also found that the lack of actual, or only minimal, harm was not a mitigating factor.

The referee also did not consider it as mitigating factors that there is no record of complaints from clients, attorneys, or courts against Barfield or that Barfield claimed to have modified her trust account practices, because she did so only after receiving notice of the disciplinary investigation. Lastly, the referee did not consider as mitigating any depression Barfield may have experienced, since she did not present any medical evidence that the depression was a direct and substantial contributing factor for her misconduct.

The referee found as an aggravating factor that this was not the first disciplinary action brought against Barfield concerning her trust account. Furthermore, the referee noted that Barfield's current misuse of her trust account was not an isolated incident but consisted of cumulative acts occurring over approximately 5 years.

The referee recommended disbarment with the following condition should Barfield apply for reinstatement: "[Barfield] should produce evidence satisfactory to the Court that she is fit to practice law; and further that the Counsel for Discipline has not been notified by the Court that [Barfield] has violated any disciplinary rule during her disbarment." The referee also recommended that Barfield be required to comply with the notification requirements of Neb. Ct. R. § 3-316 (rev. 2014) and that she be subject to punishment for contempt if she fails to do so. Finally, the referee recommended that Barfield be directed to pay costs and expenses in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 2012) and § 3-310(P) and Neb. Ct. R. § 3-323(B) within 60 days of any order imposing such costs and expenses.

## ASSIGNMENT OF ERROR

Barfield disagrees with the referee's recommendation that she should be disbarred as a sanction for her misconduct.

- 87 -

Nebraska Supreme Court Advance Sheets
305 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. BARFIELD
Cite as 305 Neb. 79

## STANDARD OF REVIEW

[1] When no exceptions to the referee's findings of fact are filed by either party in a disciplinary proceeding, this court may, at its discretion, adopt the findings of the referee as final and conclusive.[2]

[2] Because attorney discipline cases are original proceedings before this court, we review a referee's recommendations de novo on the record, reaching a conclusion independent of the referee's findings.[3]

## ANALYSIS

Under § 3-310(L), we accept the findings of the referee as final and conclusive. In addition, Barfield admitted the allegations and, pursuant to Barfield's motion, judgment on the pleadings was granted. Barfield violated §§ 3-501.15 (safekeeping property) and 3-508.4 (misconduct). The only issue left to consider is the appropriate sanction.

[3-5] Attorneys licensed to practice law in the State of Nebraska agree to operate under the supervision of the office of the Counsel for Discipline.[4] A license to practice law confers no vested right, but is a conditional privilege, revocable for cause.[5] Violation of any of the ethical standards relating to the practice of law or any conduct of an attorney in his or her professional capacity which tends to bring reproach on the courts or the legal profession constitutes grounds for suspension or disbarment.[6]

[6,7] Under Neb. Ct. R. § 3-304, this court may impose one or more of the following disciplinary sanctions: "(1) Disbarment by the Court; or (2) Suspension by the Court; or

---

[2] See § 3-310(L).

[3] *State ex rel. Counsel for Dis. v. Nimmer*, 300 Neb. 906, 916 N.W.2d 732 (2018).

[4] *Id.*

[5] *Id.*

[6] *Id.*

- 88 -

Nebraska Supreme Court Advance Sheets
305 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. BARFIELD
Cite as 305 Neb. 79

(3) Probation by the Court in lieu of or subsequent to suspension, on such terms as the Court may designate; or (4) Censure and reprimand by the Court; or (5) Temporary suspension by the Court[.]" The goal of attorney discipline proceedings is not as much punishment as a determination of whether it is in the public interest to allow an attorney to keep practicing law.[7] Providing for the protection of the public requires the imposition of an adequate sanction to maintain public confidence in the bar.[8]

[8-11] To determine whether and to what extent discipline should be imposed in an attorney discipline proceeding, we consider the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the respondent generally, and (6) the respondent's present or future fitness to continue in the practice of law.[9] Each attorney discipline case must be evaluated in light of its particular facts and circumstances.[10] For purposes of determining the proper discipline of an attorney, we consider the attorney's actions both underlying the events of the case and throughout the proceeding, as well as any aggravating or mitigating factors.[11] Furthermore, the propriety of a sanction must be considered with reference to the sanctions imposed in prior similar cases.[12]

[12] Barfield's use of her trust account as both a business account and a personal account violated the rule against commingling. Generally speaking, an attorney violates the rule against commingling when the funds of the client are

---

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

- 89 -

Nebraska Supreme Court Advance Sheets
305 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. BARFIELD
Cite as 305 Neb. 79

intermingled with those of the attorney in such a way that their separate identity is lost and they may be used by the attorney for personal expenses or subjected to the claims of the attorney's creditors.[13] Section 3-501.15(a) requires a lawyer to "hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property." Section 3-501.15(a) also requires that client "[f]unds shall be kept in a separate account maintained in the state where the lawyer's office is situated." The only exception is when the lawyer's own funds are deposited into a client trust account for the sole purpose of paying bank service charges on that account, and the exception applies only to deposits in the amount necessary for that purpose.[14] Neither good faith nor ignorance of the rules prohibiting commingling client and personal funds provides a defense to a disciplinary charge that an attorney violated the rules against commingling.[15]

[13,14] This court considers commingling of client funds with an attorney's own funds to be a matter of gravest concern in reviewing claims of lawyer misconduct.[16] The practice involves the inherent danger of unforeseen circumstances jeopardizing the safety of the client's funds.[17] Even when the client suffers no loss, an attorney's commingling of client funds with personal funds is not a trivial or technical rule violation.[18]

[15] Because it is such a dangerous and unfortunately common basis for disciplinary action, there is a continuing need to send a clear and strong message deterring attorneys from commingling client and personal funds and from using

---

[13] *Id.*

[14] § 3-501.15(b).

[15] *State ex rel. Counsel for Dis. v. Nimmer, supra* note 3.

[16] *Id.*

[17] See *id.*

[18] *Id.*

- 90 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
305 NEBRASKA REPORTS
STATE EX REL. COUNSEL FOR DIS. v. BARFIELD
Cite as 305 Neb. 79

client trust accounts as personal checking accounts.[19] Commingling of client funds with personal funds, even when it does not involve obvious misappropriation, harms the reputation of the entire legal profession by undermining public confidence and trust in attorneys, in the courts, and in the legal system.[20] Thus, we have repeatedly said that absent extraordinary mitigating circumstances, disbarment is the appropriate discipline in cases of misappropriation or commingling of client funds.[21]

[16,17] The burden is on the respondent to provide evidence to be considered for mitigation of the formal charges. Cooperation and remorse during disciplinary proceedings are mitigating factors,[22] and it is undisputed that Barfield readily admitted her misconduct, fully cooperated in the investigation, acknowledged responsibility for her actions, and acknowledged that her violations harmed the public. Furthermore, Barfield testified that she provided legal services at a reasonable cost to those who could not otherwise afford such services. Continuing commitment to the legal profession and the community is a mitigating factor in an attorney discipline case,[23] although we note that the record here is somewhat limited as to the level of Barfield's community involvement throughout her career.

---

[19] See *id.*

[20] See *id.*

[21] See *id.* See, also, *State ex rel. Counsel for Dis. v. Thebarge*, 289 Neb. 356, 854 N.W.2d 914 (2014); *State ex rel. Counsel for Dis. v. Council*, 289 Neb. 33, 853 N.W.2d 844 (2014); *State ex rel. Counsel for Dis. v. Crawford*, 285 Neb. 321, 827 N.W.2d 214 (2013); *State ex rel. Counsel for Dis. v. Switzer*, 280 Neb. 815, 790 N.W.2d 433 (2010); *State ex rel. NSBA v. Howze*, 260 Neb. 547, 618 N.W.2d 663 (2000); *State ex rel. NSBA v. Malcom*, 252 Neb. 263, 561 N.W.2d 237 (1997); *State ex rel. NSBA v. Woodard*, 249 Neb. 40, 541 N.W.2d 53 (1995).

[22] See *State ex rel. Counsel for Dis. v. Switzer, supra* note 21.

[23] See, *State ex rel. Counsel for Dis. v. Trembly*, 300 Neb. 195, 912 N.W.2d 764 (2018); *State ex rel. Counsel for Dis. v. Council, supra* note 21.

- 91 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
305 NEBRASKA REPORTS
STATE EX REL. COUNSEL FOR DIS. v. BARFIELD
Cite as 305 Neb. 79

[18] Barfield further represents as a mitigating factor that there have never been any complaints against her for mishandling clients' cases or for failing to communicate or act. We have recognized that having no prior complaints is a mitigating factor,[24] but we have not considered mitigating the lack of complaints in one area of conduct when there has been a past complaint in another area. Barfield's assertion ignores the prior complaint that resulted in the private reprimand in 2000.

[19] Barfield does not argue that her mental or physical health is a mitigating factor. Regarding depression, we have said that in order to be a mitigating factor, the respondent must show (1) medical evidence that he or she is affected by depression, (2) that the depression was a direct and substantial contributing cause to the misconduct, and (3) that treatment of the depression will substantially reduce the risk of further misconduct.[25] No such evidence was presented in this case. Neither, rightly, does Barfield argue that her lack of staff and her living situation, leading to her admittedly poor accounting practices, presented mitigating factors. Poor accounting practices are neither an excuse nor a mitigating circumstance in reference to commingled or misappropriated funds.[26]

[20] We have considered prior reprimands as aggravators,[27] and we agree with the referee that the conduct resulting in the 2000 reprimand is an aggravating factor in this case. Because cumulative acts of attorney misconduct are distinguishable from isolated incidents, they justify more serious sanctions.[28] We have said that cumulative acts of misconduct can, and often do, lead to disbarment.[29] Barfield's description of her

---

[24] See *State ex rel. Counsel for Dis. v. Pierson*, 281 Neb. 673, 798 N.W.2d 580 (2011).

[25] *State ex rel. Counsel for Dis. v. Switzer, supra* note 21.

[26] See *State ex rel. Counsel for Dis. v. Nimmer, supra* note 3.

[27] *State ex rel. Counsel for Dis. v. Switzer, supra* note 21.

[28] *Id.*

[29] See *id.*

- 92 -

Nebraska Supreme Court Advance Sheets
305 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. BARFIELD
Cite as 305 Neb. 79

prior reprimand as a "misunderstanding of a debt owed to a medical provider," which occurred in the "distant past," does not remove it as an aggravating factor.[30]

Moreover, we consider aggravating the fact that the acts of commingling presently at issue were both intentional and routine over the course of several years. During that time, Barfield used her trust account as both a business account and a personal account, regularly withdrawing cash or paying directly from the trust account her utilities, medical expenses, and store purchases.

Barfield asserts that the level of moral turpitude reflected in her commingling and misappropriation was dissimilar to other cases in which we have imposed disbarment, in that she "used her own funds from her trust account to pay day to day meager expenses because she lost her other accounts to write checks from," adding that "[s]he did not steal anybody's money."[31] But we have repeatedly said that the fact that a client did not suffer any financial loss does not excuse an attorney's misappropriation of client funds and does not provide a reason for imposing a less severe sanction than disbarment.[32] Further, Barfield fails to point to a case where the prolonged use of a trust account to pay meager, as opposed to lavish, expenses has led to a lesser sanction.

In numerous cases, we have imposed disbarment for commingling or misappropriation when the client did not suffer a financial loss, even when there were mitigating factors.[33]

---

[30] Brief for respondent at 7.

[31] *Id.* at 9, 10.

[32] See, *State ex rel. Counsel for Dis. v. Crawford, supra* note 21; *State ex rel. Counsel for Dis. v. Beltzer*, 284 Neb. 28, 815 N.W.2d 862 (2012).

[33] See, e.g., *State ex rel. Counsel for Dis. v. Nimmer, supra* note 3; *State ex rel. NSBA v. Howze, supra* note 21; *State ex rel. NSBA v. Malcom, supra* note 21; *State ex rel. NSBA v. Gridley*, 249 Neb. 804, 545 N.W.2d 737 (1996); *State ex rel. NSBA v. Woodard, supra* note 21; *State ex rel. NSBA v. Veith*, 238 Neb. 239, 470 N.W.2d 549 (1991).

- 93 -

Nebraska Supreme Court Advance Sheets
305 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. BARFIELD
Cite as 305 Neb. 79

In *State ex rel. NSBA v. Veith*,[34] for example, the relator was disbarred because of several instances over the course of 8 months of having a deficient balance in his client trust account, which he subsequently attempted to remedy through personal loans to cover the deficiencies. The deficiencies were the result of transfers to his business account, and the transferred funds were used for salaries, office expenses, an upgraded computer system and law library, and a car.[35]

We noted case law from other jurisdictions holding that the mere fact that an attorney's trust account balance falls below the amount deposited in and purportedly held in trust supports a finding of misappropriation, explaining that wrongful or improper intent is not an element of misappropriation.[36] We found the proper sanction to be disbarment, despite no aggravating factors and several mitigating factors, including being in good standing and free from disciplinary complaint or penalty, cooperation with the investigation, remorse, a good reputation in the community, and the provision of many pro bono hours.[37] We repeated that an attorney has a duty to keep separate and properly account for client trust funds and explained that an attorney may not use client trust funds to cover business expenses.[38] We also disapproved of a prior trend toward lighter sanctions for such behavior, citing with approval another court's reasoning that imposing lighter discipline would """"stand out like an invitation to the lawyer who is in financial difficulty for one reason or another"""" and that """"[t]he profession and the public suffer as a consequence.""""[39]

---

[34] *State ex rel. NSBA v. Veith, supra* note 33.

[35] *Id.*

[36] See *id.*

[37] See *id.*

[38] *Id.*

[39] *Id.* at 252, 470 N.W.2d at 558, quoting *The Florida Bar v. Breed*, 378 So. 2d 783 (Fla. 1979).

- 94 -

Nebraska Supreme Court Advance Sheets
305 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. BARFIELD
Cite as 305 Neb. 79

[21] We have generally imposed the lesser discipline of suspension in cases of commingling or misappropriation only where (1) it involved an isolated incident or a limited number of incidents over a relatively isolated period of time, (2) there were multiple significant mitigating factors, and (3) there were no aggravating factors.[40] Mitigating factors may overcome the presumption of disbarment in misappropriation and commingling cases only where they are extraordinary and, when aggravating circumstances are present, they substantially outweigh those aggravating circumstances.[41]

Here, the mitigating factors of Barfield's cooperation, remorse, and efforts to provide affordable representation to the community, while laudable, are insufficient both to rebut the presumption of disbarment for commingling and to substantially outweigh the aggravating factors. This is not the first time Barfield has been disciplined in relation to her maintenance of her trust account, and she has for several years engaged in a continuous pattern of commingling client funds. Especially in light of the prior reprimand, Barfield's prolonged and persistent violation of the rule against commingling reflects a general failure to fully comprehend the serious nature of such conduct.[42]

After balancing the relevant factors in comparison to other cases, considering the need to protect the public, considering the need to deter others, and considering the reputation of the

---

[40] See, *State ex rel. Counsel for Dis. v. Davis*, 276 Neb. 158, 760 N.W.2d 928 (2008); *State ex rel. Counsel of Dis. v. Wintroub*, 267 Neb. 872, 678 N.W.2d 103 (2004); *State ex rel. Counsel for Dis. v. Huston*, 262 Neb. 481, 631 N.W.2d 913 (2001); *State ex rel. NSBA v. Kratina*, 260 Neb. 1030, 620 N.W.2d 748 (2001); *State ex rel. NSBA v. Bruckner*, 249 Neb. 361, 543 N.W.2d 451 (1996); *State ex rel. NSBA v. Gleason*, 248 Neb. 1003, 540 N.W.2d 359 (1995). But see *State ex rel. Counsel for Dis. v. Sundvold*, 287 Neb. 818, 844 N.W.2d 771 (2014).

[41] See, *State ex rel. Counsel for Dis. v. Nimmer, supra* note 3; *State ex rel. NSBA v. Woodard, supra* note 21.

[42] See *State ex rel. Counsel for Dis. v. Nimmer, supra* note 3.

bar as a whole, we agree with the referee that disbarment is the only appropriate sanction.

## CONCLUSION

Barfield violated §§ 3-501.15 (safekeeping property) and 3-508.4 (misconduct). It is the judgment of this court that Barfield is disbarred from the practice of law in the State of Nebraska, effective immediately. She is directed to comply with § 3-316, and upon failure to do so, she shall be subject to punishment for contempt.

JUDGMENT OF DISBARMENT.

HEAVICAN, C.J., not participating.